**FIRST DIVISION**
March 8, 2010

No. 1-08-1304

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 07 CR 6122 |
| | ) | |
| LEONARD STRICKLAND, | ) | The Honorable |
| | ) | Daniel P. Darcy, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GARCIA delivered the opinion of the court.

Following a jury trial, the defendant was convicted of one count of delivery of a controlled substance containing less than one gram of heroin and sentenced to 15 years in prison. The defendant contends the trial court committed reversible error by refusing to rule on his motion brought pursuant to People v. Montgomery, 47 Ill. 2d 510, 268 N.E.2d 695 (1971), until after he testified, thereby interfering with his ability to knowingly exercise his constitutional right to testify. The defendant further contends the trial court violated his right to an impartial jury by failing to ensure that the individual jurors understood and accepted the principles set forth in People v. Zehr, 103 Ill. 2d 472, 469 N.E.2d 1062 (1984), now embodied in Illinois Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007).

No. 1-08-1304

Lastly, the defendant contends he was denied his right to effective assistance of counsel where the defense theory was that the State failed to present physical evidence tying the defendant to the drugs, yet trial counsel elicited from a State witness testimony allegedly defeating that theory.

Because we find the defendant forfeited his Montgomery-based claim by failing to testify, the jury was properly admonished pursuant to Supreme Court Rule 431(b), and defense counsel provided effective assistance, we affirm.

BACKGROUND

Prior to trial, both parties submitted motions in limine regarding the admissibility of the defendant's prior convictions for impeachment purposes. The court deferred its ruling: "I am going to rely on a U.S. case, which is Luce versus U.S., [469 U.S. 38, 83 L. Ed. 2d 443, 105 S. Ct. 460 (1984),] and I will have to make my decision if and when the defendant should testify in order to make the proper ruling." Defense counsel objected and asked the court to issue a ruling prior to trial; the court did not.

The evidence at trial established that on February 18, 2007, the defendant was arrested in front of his home at 940 North Monticello in Chicago, with another individual, Derrick Crowder. No currency or drugs were found on the defendant's person or in the area.

Five police officers testified to the circumstances of the

2

No. 1-08-1304

defendant's arrest. The officers were part of a 10-member team sent to the area of Monticello and Augusta in Chicago with instructions to purchase drugs with marked police funds, referred to as section 1505 funds. Officers Singleton and Randolph, two plainclothes officers, conducted surveillance of the area from separate, parked, unmarked vehicles. Undercover officers Mar and Contreras acted as purchase officers and arrived in the area in an unmarked vehicle. All four officers were in radio contact with enforcement officers Bates and Liss, who were stationed nearby.

When they arrived at the intersection of Monticello and Augusta, Officers Mar and Contreras saw an individual they identified at trial as the defendant. Officer Mar testified the defendant was standing in the middle of the street about 20 feet away. Officer Contreras, who was seated in the passenger side of the vehicle, testified the defendant was standing on the west side of Monticello. The officers described the defendant as wearing a black coat, gray, hooded sweatshirt, blue jeans and tan boots. The defendant was not waving down cars, just standing in the street.

Officers Mar and Contreras drove up to the defendant with the driver's side window rolled down and Officer Mar engaged the defendant in conversation. The defendant inquired as to what Officer Mar needed. Officer Mar asked for "three blows," meaning heroin. The defendant directed Officer Mar to park his vehicle

3

No. 1-08-1304

near 958 North Monticello. The defendant then walked southbound and entered a gangway a few buildings away. When the defendant entered the gangway, both Officers Mar and Contreras and the surveillance officers, Singleton and Randolph, lost sight of the defendant.

The officers testified the defendant soon emerged from the gangway, approached within a foot and a half of the driver's side window of Officer Mar's vehicle and facing Officer Mar directly, exchanged two foil packets for $30 of section 1505 funds. Although expecting three foil packets, Officer Mar drove away immediately after receiving two packets. As he drove away, Officer Mar communicated a description of the defendant to Officers Liss and Bates.

Officer Singleton, who had witnessed the transaction from his vehicle, testified that after Officer Mar drove way, the defendant walked southbound on Monticello, appearing to count the funds he had been handed. The defendant then met an unidentified black man dressed in dark clothing who had emerged from the same gangway the defendant had entered earlier. The men shook hands and the unidentified individual walked back into the gangway, out of Officer Singleton's sight. The defendant remained on Monticello, but Officer Singleton could no longer see any United States currency in the defendant's hands. Officer Singleton did not include the defendant's encounter with the unidentified man in his incident report. Officer Randolph did not see this

4

No. 1-08-1304

encounter.

The defendant was subsequently approached by a second individual, identified by the officers at trial as Derrick Crowder. As Crowder approached the defendant, the enforcement officers arrived. The enforcement officers detained both individuals. Before either individual was handcuffed, Officers Mar and Contreras returned. From inside their vehicle, about 20 feet away, Officers Mar and Contreras identified the defendant as the individual that sold them the foil packets.

A custodial search of the defendant recovered no drugs or section 1505 funds. After placing the defendant in his unmarked vehicle, Officer Liss searched the gangway the defendant had entered and the surrounding area for the individual the defendant had encountered as related by Officer Singleton. Officer Liss did not see another individual; no section 1505 funds were ever recovered.

A forensic scientist testified the foil packets tested positive for the presence of heroin.

The defendant did not testify at trial and the defense presented no evidence. The defense theory was that the State failed to prove the defendant was the individual that sold the officers the heroin because no currency or drugs were found on the defendant. During cross-examination of the officers, defense counsel elicited that recording capabilities were available during the surveillance, but not used, and that the foil packets

5

were not checked for fingerprints. Defense counsel sought to further bolster this theory during her cross-examination of the forensic scientist. In response to defense counsel's questioning, the forensic scientist testified that his lab did not routinely check items like the foil packets for fingerprints, explaining that, although he was not an expert, it was his opinion that it was unlikely that fingerprints could be successfully lifted from the foil packets. On redirect, the State elicited testimony that either party could have requested a fingerprint examination of the packets but neither party did. It is this exchange that the defendant premises his ineffective assistance of counsel claim.

The jury returned a guilty verdict. In his motion for a new trial, of the three issues brought here, the defendant raised only his claim that the trial court erred in refusing to rule on his Montgomery motion until after he testified. This timely appeal followed.

ANALYSIS

Montgomery Motion

The defendant first argues that the trial court committed reversible error by refusing to rule on his motion in limine to bar the admission of evidence of his prior convictions pursuant to Montgomery until after the defendant testified. The defendant contends that by doing so, the trial court interfered with his "constitutional right to testify."

6

No. 1-08-1304

Though the defendant phrases this issue as centering on his "constitutional right to testify," we see no reason to frame our analysis on such a right. Though it appears no longer an open question that such a constitutional right exists[1], we discern the controlling issue to be whether the trial court's decision to defer ruling on the defendant's motion in limine prevented the defendant from testifying. See People v. Knox, 58 Ill. App. 3d 761, 767, 374 N.E.2d 957 (1978).

Against the backdrop of a constitutional right to testify, the Knox court concluded that the dispositive question is whether the defendant "was prevented from testifying." Knox, 58 Ill. App. 3d at 767. In what now might be described as a motion pursuant to People v. Krankel, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984), the defendant in Knox filed a pro se " 'affidavit in support of motion' *** [wherein he] stated that his attorney had prevented him from testifying in his own behalf, even though

---

[1] "We concur with [the statement by federal courts that a defendant has a constitutional right to testify in his own behalf.] Furthermore, we believe it would be anomalous indeed that the sixth and fourteenth amendments to the United States Constitution guaranteed a criminal defendant the right to make his own defense by representing himself as pro se counsel [citation], yet that same defendant possessed no constitutional right to testify in his own defense." People v. Knox, 58 Ill. App. 3d 761, 766, 374 N.E.2d 957 (1978).

7

defendant had desired to do so." Knox, 58 Ill. App. 3d at 763.
The court found no support in the record that "his right to
testify was violated by his trial counsel." Knox, 58 Ill. App.
3d at 763. Rather, the court held that if trial counsel advises
his client not to testify and "the client acquiesces in his
counsel's conduct in this regard he should be bound by such
action. [Citation.] Like any other right, the right to testify
may be waived." Knox, 58 Ill. App. 3d at 767.

Based on Knox, we determine that the instant defendant's
contention is implicitly a claim that he was prevented from
testifying by the circuit court's refusal to rule on his motion
in limine prior to trial. The issue, in terms of waiver, is
whether the defendant waived the issue of the trial court's
deferral of its ruling on the defendant's motion in limine when
he failed to take the stand. Stated differently, in light of the
defendant's decision not to exercise his right to testify based
on the trial court's refusal to rule first, is it a matter of
speculation that the defendant would have testified had the trial
court timely ruled on the motion in limine regarding the
admissibility of his prior convictions for impeachment purposes
under Montgomery? See People v. Patrick, 233 Ill. 2d 62, 78, 908
N.E.2d 1 (2009) ("any possible harm flowing from the trial
court's denial of a motion in limine to bar impeachment by a
prior conviction is wholly speculative absent the defendant's
testimony"), citing Luce v. United States, 469 U.S. 38, 41-43, 83

L. Ed. 2d 443, 447-48, 105 S. Ct. 460, 463-64 (1984).

In his main brief, the defendant asserts that because "[t]he trial court abused its discretion where it cited a blanket policy to defer ruling on Strickland's Montgomery motion *** this Court should reverse Strickland's conviction and remand for a new trial." The State denies there is any support in the record for such a "blanket policy" finding. Certainly, there is no statement by the trial court here that it does not issue "advisory opinions" when presented with such a motion as was present in Patrick. Patrick, 233 Ill. 2d at 74. Nonetheless, even assuming arguendo that such a blanket policy underlies the trial judge's decision in this case, we determine that such a finding alone is insufficient to warrant a new trial given the supreme court's decision in Patrick.

The defendant is essentially asking that we remand for a new trial without requiring of the defendant a showing that the trial on remand will be different from the trial that concluded with his conviction, that is, the defendant would once again elect not to testify. To grant a new trial based on no more than a showing of an abuse of discretion, as the defendant requests, would be to engage in the very speculation that spurred the supreme court's decision in the companion case in Patrick.

The speculative nature of the defendant's claim of prejudice here is best demonstrated by a contrast of Patrick and its companion case, Phillips. The contrasting circumstances show why

9

defendant Patrick was prejudiced by the trial court's deferral of its ruling on his motion in limine and, in defendant Phillips' case, why speculation abounded, making his claim not subject to review.

In Patrick, the circuit court declined to rule on the Montgomery-based motion in limine until the defendant had testified in accordance with the circuit court's blanket policy against such "advisory opinions." Patrick, 233 Ill. 2d at 74. The supreme court ruled that the circuit court's deferral of its ruling on the motion in limine prejudiced defendant Patrick because "Patrick's counsel was unable to inform the jury whether Patrick would testify and was anticipatorily unable to disclose Patrick's prior convictions to lessen the prejudicial effect the convictions would have on his credibility." Patrick, 233 Ill. 2d at 75. In other words, defendant Patrick's trial might well have been different, at least as to his opening statement and direct testimony.

As to defendant Phillips, "[t]he trial judge granted the motion in limine in part and determined that one of Phillips' convictions would be excluded, but stated he could not determine whether three other convictions *** were more probative than prejudicial until he heard Phillips' testimony." Patrick, 233 Ill. 2d at 67. The trial court never issued its ruling on the remaining three convictions because defendant Phillips never testified, leading to the supreme court's ruling that "any

10

possible harm flowing from the trial court's denial of a motion in limine to bar impeachment by a prior conviction is wholly speculative." Patrick, 233 Ill. 2d at 78. Just as in Luce, it appears defendant Phillips made "no commitment *** that he would testify if the motion were granted, nor did he make a proffer to the court as to what his testimony would be." Luce, 469 U.S. at 39, 83 L. Ed. 2d at 446, 105 S. Ct. at 462. Thus, the claimed harm was not the only speculative component to defendant Phillips' claim; it was also a matter of speculation that defendant Phillips would have testified had the circuit court made a timely ruling on his motion in limine.

Of course, a defendant is under no obligation to testify, which means that only when a defendant knows in advance of trial that he will be taking the stand will he so inform the jury in his opening statement. Under circumstances where a defendant is unsure whether he will testify, defense counsel will not represent to the jury that the defendant will take the stand. In other words, even with a pretrial ruling, a defendant will not inform the jury that he will take the stand unless he, in fact, plans to testify, as defendant Patrick did.

Of course, only if a defendant testifies does an anticipatory disclosure of admissible prior convictions, to lessen the prejudicial impact on his credibility, come into play. If the defendant does not take the stand, the opportunity to own up to prior convictions before the jury in his direct testimony

11

No. 1-08-1304

is of no moment.

Under Knox, we examine whether the trial court's refusal to rule on the motion in limine prevented the defendant from testifying. Had the ruling in defendant Phillips' case been made pretrial, some or all three of his remaining convictions would be ruled admissible as impeachment or not. Under the worst case scenario, all three of his prior convictions would have been found admissible for impeachment. Under the best case scenario, some or all three of his prior convictions would have been found more prejudicial than probative, barring their disclosure to the jury.

Under the worst case scenario, no speculation is involved in our conclusion that the record does not support a finding that the defendant was prejudiced by the trial court's decision to defer its ruling on the admissibility of the three remaining convictions. This is so because the trial court's deferral of its ruling could have made no difference in the defendant's decision not to testify. If the defendant were intent on testifying, his expectation under the worst case scenario would have been that all three convictions would be introduced for impeachment purposes. His failure to testify demonstrates that the absence of a pretrial ruling where the trial court would have found all three prior convictions admissible under Montgomery did not prevent the defendant from testifying, causing him no prejudice.

12

No. 1-08-1304

It is under the best case scenario that defendant Phillips' claim is grounded in speculation. When considering a motion in limine to exclude prior convictions, the circuit court must weigh the probative value of a prior conviction against the prejudicial effect to the defendant. It is not simply that the circuit court's delay in ruling on the motion in limine prejudiced defendant Phillips; rather, necessary to defendant Phillips' claim that he was prejudiced is a demonstration that the record supports a favorable ruling by the trial court on his motion in limine. The defendant must urge that we speculate on the trial court's ruling under Montgomery to support his claim that he was prejudiced by the trial court's failure to issue a timely decision.

In other words, defendant Phillips' true claim is that the trial court would have granted, in whole or in part, his motion to bar the admissibility of his three remaining convictions (otherwise the worst case scenario would obtain). We cannot review a decision by the circuit court that was never made. "A reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context." Luce, 469 U.S. at 41, 83 L. Ed. 2d at 447, 105 S. Ct. at 463. This is especially true when, under an abuse of discretion standard, our review must accord deference to the circuit court's ruling. See People v. Donoho, 204 Ill. 2d 159, 186, 788 N.E.2d 707 (2003) (under an abuse of discretion standard, "[t]he reviewing court

13

owes some deference to the trial court's ability to evaluate the impact of the evidence on the jury").  More to the point, as best we can tell, no argument was made by defendant Phillips that the circuit court should have barred some or all of his prior convictions for purposes of impeachment.

In any event, we find it improbable that any record would support a showing that the circuit court would have issued a favorable ruling on a defendant's motion in limine when, by virtue of the defendant not testifying, no ruling was ever issued.  "On the record such as here, it would be a matter of conjecture whether the District Court would have allowed the Government to attack petitioner's credibility at trial by means of the prior conviction."  Luce, 469 U.S. at 42, 83 L. Ed. 2d at 448, 105 S. Ct. at 463.  Of course, it remains a matter of conjecture that were a new trial granted to defendant Phillips, his new trial would differ from the trial that resulted in his conviction, that is, he would elect to testify.

Thus, the prejudice identified in defendant Patrick's situation would only arise if a defendant testifies.  When a defendant does not testify, any claim of prejudice owing to not knowing in advance of trial the circuit court's ruling on his Montgomery motion is speculative.  In other words, a defendant in Phillips' situation can make no showing that his trial would have been different had the trial court timely ruled on his motion in limine when he fails to testify.  That the trial court's deferral

14

of its ruling did not prevent the defendant from testifying is demonstrated in a very practical sense when we consider that the trial court deferred its ruling in defendant Patrick's trial, yet defendant Patrick testified.

The speculative nature of defendant Phillips' claim leads us back to the dispositive question before us under Knox: whether the absence of a pretrial ruling prevented the defendant here from testifying. As in Phillips' case, the answer must be in the negative when the defendant does not testify. Under the worst case scenario, with a ruling that all of the defendant's prior convictions were admissible, it is inescapable that the defendant would not have testified just as he did not testify when no timely ruling of his motion in limine was made. Under the best case scenario, that all prior convictions were inadmissible, essential to a finding that the deferral prevented the defendant from testifying is a necessary finding that the circuit court would have ruled the prejudicial impact outweighed the probative value of the evidence. However, we cannot review a ruling by the trial court that was never made. Nor does the defendant argue that his motion in limine should have been granted; he argues only that he was entitled to a ruling.

When the defendant does not testify, it is grounded on conjecture to find the defendant was prevented from testifying because some or all of his prior convictions should have been ruled inadmissible. The very ruling by the circuit court

15

necessary for his claim of prejudice is foreclosed by his failure to testify. We reject the implied argument by the defendant that he was prevented from testifying because he expected a favorable ruling by the trial court on his motion in limine that was never issued.

In Patrick, the supreme court found not only that defendant Phillips suffered no prejudice when he did not testify, the court reversed the appellate court's ruling that the circuit court abused its discretion in deferring its ruling on the admissibility for impeachment purposes of the three remaining prior convictions until after the defendant testified. Patrick, 233 Ill. 2d at 77. The supreme court reasoned "that the issue of the trial court's refusal to rule on Phillips' motion in limine seeking to bar the use of prior convictions for impeachment was not preserved for review because Phillips chose not to testify." Patrick, 233 Ill. 2d at 77. As support, the supreme court relied on the very case the trial judge here read as granting him authority to defer ruling on the defendant's motion in limine-- Luce, 469 U.S. 38, 83 L. Ed. 2d 443, 105 S. Ct. 460. Luce held that a trial court's denial of a motion in limine to bar the introduction of impeaching prior convictions was not reviewable on appeal where the defendant did not testify. Luce, 469 U.S. at 41-43, 83 L. Ed. 2d at 447-48, 105 S. Ct. at 463-64. Consistent with federal court cases that have found nonreviewable a trial court's refusal to rule on the admissibility of prior convictions

16

until a defendant has testified (see People v. Phillips, 371 Ill. App. 3d 948, 952, 908 N.E.2d 823 (2007), rev'd, 233 Ill. 2d 62, 908 N.E.2d 1 (2009) (and cases cited therein)), our supreme court read Luce to bar review even of the trial court's decision not to rule on a defendant's motion in limine. Patrick, 233 Ill. 2d at 79. Thus, the appellate court in Phillips was wrong to find an abuse of discretion on the part of the trial judge even though it rejected reviewing the defendant's claim of prejudice because the defendant did not testify. Patrick, 233 Ill. 2d at 79.

As the defendant points out in his brief, the supreme court has granted leave to appeal in two cases that share circumstances with the two cases addressed in Patrick. The supreme court has granted review to determine whether a circuit court's "blanket policy" (as in defendant Patrick's case) of deferring its ruling on a motion in limine warrants granting relief even if the defendant does not testify (as in defendant Phillips' case). People v. Tucker, No. 1-06-2619 (May 12, 2008) (unpublished under Supreme Court Rule 23), appeal allowed, 231 Ill. 2d 684, 904 N.E.2d 985 (2009); People v. Averett, 381 Ill. App. 3d 1001, 886 N.E.2d 1123 (2008), appeal allowed, 231 Ill. 2d 671, 904 N.E.2d 985 (2009).

Based on Patrick, the initial question before the supreme court in the pending cases is whether the trial court's deferral of its ruling is subject to review for an abuse of discretion, much as the appellate court ruled in Phillips. If the supreme

17

court determines that the issue may be reviewed for an abuse of discretion and, under the facts, finds an abuse of discretion occurred, then the question becomes whether the defendant was prejudiced by the trial court's deferral as the supreme court determined in defendant Patrick's appeal.

Here, however, the defendant makes no showing that he was prevented from testifying by the trial court's failure to issue a pretrial ruling on the defendant's motion <u>in limine</u>.  In other words, we are offered no basis to find harm to the defendant when he makes no showing that the new trial he seeks would differ from the trial that resulted in his conviction.  We decline the defendant's invitation to grant a new trial based solely on a purported blanket policy by the trial court of deferring to rule on a motion <u>in limine</u>, at least until the supreme court tells us otherwise.  As we noted, the State denies the record here supports a "blanket policy" finding.[2]

Nonetheless, under the analysis followed by the supreme court in <u>Patrick</u>, we conclude that the defendant must show prejudice to warrant a new trial even where it can be said the trial court "refuse[d] to exercise any specific discretion." <u>Patrick</u>, 233 Ill. 2d at 74.  The defendant makes no such showing

---

[2] There is no difference in outcome had the defendant asserted the less serious infraction that the circuit court abused its discretion by deferring its ruling even where it had no blanket policy, as the State contends here.

18

No. 1-08-1304

of prejudice here; nor does the defendant contend that the exception to the rule requiring actual prejudice should apply. See People v. Dixon, 23 Ill. 2d 136, 137, 177 N.E.2d 206 (1961).

In Dixon, our supreme court determined the exception to the rule requiring a showing of prejudice applies where it "would be impossible or inordinately difficult to make [a showing of prejudice,] for it can not be shown how the testimony might have differed had the motion [to exclude] been allowed." Dixon, 23 Ill. 2d at 140. In Dixon, the trial judge denied the defendant's motion to exclude witnesses based solely on his practice to the contrary: " 'Well, I don't like to do that.' " Dixon, 23 Ill. 2d at 137. While the supreme court ultimately determined that it remains within the trial court's discretion whether to grant such a motion, "a motion to exclude witnesses should normally be allowed." Dixon, 23 Ill. 2d at 140. "In order to uphold the denial of a motion to exclude, the record should disclose a sound basis for such denial. *** Where the record discloses an arbitrary denial of a motion to exclude witnesses, as in the present case, it is not necessary for the defendant to establish that he has been prejudiced thereby." Dixon, 23 Ill. 2d at 140.

Whether a judicial practice of deferring a ruling on a motion in limine should give rise to a presumption of prejudice in preventing a defendant from testifying in the same way a judge's practice of arbitrarily refusing to exclude witnesses makes unnecessary a showing of prejudice, we must leave to our

19

No. 1-08-1304

supreme court to determine in the cases pending before it.  If the supreme court should determine such a claim is reviewable, even in the absence of a defendant testifying, and, still further, should find prejudicial error to warrant a new trial, then we expect our decision here to be vacated.

Because we find the issue before us settled law, the outcome here is predetermined.  See Averett, 381 Ill. App. 3d at 1020 ("defendant's failure to testify eliminates the circuit court's refusal to rule as a reviewable issue"), appeal allowed, 231 Ill. 2d 671, 904 N.E.2d 985 (2009); People v. Harris, 123 Ill. 2d 113, 129, 526 N.E.2d 335 (1988) ("the precedential effect of an appellate court opinion is not weakened by the fact that a petition for leave to appeal has been granted and is pending in that case").  The defendant's claim based on a motion brought pursuant to Montgomery is not subject to review when he fails to testify.

Supreme Court Rule 431(b)

The defendant next argues the trial court erred in conducting voir dire by failing to ascertain the individual understanding and acceptance of the Zehr principles of each juror in violation of amended Illinois Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007), thereby depriving him of his constitutional right to a fair and impartial jury.

In Zehr, the supreme court held the trial court erred by

20

No. 1-08-1304

refusing defense counsel's request to ask certain questions during <u>voir</u> <u>dire</u>. <u>Zehr</u>, 103 Ill. 2d at 476-78. The supreme court determined:

>              "[E]ssential to the qualification of
>         jurors in a criminal case is that they know
>         that a defendant is presumed innocent, that
>         he is not required to offer any evidence in
>         his own behalf, that he must be proved guilty
>         beyond a reasonable doubt, and that his
>         failure to testify in his own behalf cannot
>         be held against him."  <u>Zehr</u>, 103 Ill. 2d at
>         477.

The supreme court found these guarantees go to the " 'heart of a particular bias or prejudice which would deprive defendant of his right to a fair and impartial jury' " and, thus, must be covered during <u>voir</u> <u>dire</u> when requested by defense counsel. <u>Zehr</u>, 103 Ill. 2d at 477-78, quoting <u>People v. Zehr</u>, 110 Ill. App. 3d 458, 461, 442 N.E.2d 581 (1982). After <u>Zehr</u> was decided, the Illinois Supreme Court amended Rule 431(b) in 1997 to require a trial court to question venire members regarding the <u>Zehr</u> principles when so requested by the defendant. In 2007, the rule was once again amended to eliminate the need for a request by a defendant before such questions must be asked. Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.

The defendant admits his trial counsel did not object during

21

No. 1-08-1304

<u>voir dire</u> or include this issue in his posttrial motion; the defendant seeks to invoke the plain error doctrine. The plain error doctrine was outlined by our supreme court in <u>People v. Herron</u>, 215 Ill. 2d 167, 830 N.E.2d 467 (2005).

> "[T]he plain-error doctrine bypasses
> normal forfeiture principles and allows a
> reviewing court to consider unpreserved error
> when either (1) the evidence is close,
> regardless of the seriousness of the error,
> or (2) the error is serious, regardless of
> the closeness of the evidence." <u>Herron</u>, 215
> Ill. 2d at 186-87.

The defendant contends that he meets both prongs of the plain error doctrine. However, before considering plain error, we must first determine " 'whether error occurred at all.' " <u>People v. Harris</u>, 225 Ill. 2d 1, 31, 866 N.E.2d 162 (2007), quoting <u>People v. Wade</u>, 131 Ill. 2d 370, 376, 546 N.E.2d 553 (1989).

The entire jury selection process conducted by Judge Darcy is contained in the record. Judge Darcy questioned two separate groups of prospective jurors from which the jury was picked. As to each group, Judge Darcy asked essentially the same questions:

> "Ladies and gentlemen I am going to ask
> you some questions as a whole. First one is
> do any of you have a bias or prejudice
> against a person simply because they are

22

charged with a crime. If you do, please raise your hand.

Let the record reflect no hands raised.

Do you know of any reason why you can't give both sides a fair trial and keep an open mind throughout? If you won't be able to do that, please let me know by raising your hand.

Do all of you understand that the defendant is presumed innocent and doesn't have to offer any evidence on his own behalf but must be proven guilty beyond a reasonable doubt by the State? If you don't understand that or disagree with that please raise your hand.

If the defendant decides not to testify in his own behalf, would any of you hold that against him?" If you would, please raise your hand.

***

If the State proves the defendant guilty beyond a reasonable doubt would you hesitate at all in returning a verdict of guilty? If you would, please raise your hand.

***

23

No. 1-08-1304

> If the State fails to prove the
> defendant guilty beyond a reasonable doubt,
> would any of you hesitate in returning a
> verdict of not guilty?  If you would, please
> raise your hand.
>
> ***
>
> Would you follow the law as I give it to
> you in the instructions regardless of what
> you personally think the law should be?
> Would you be able to do that?  If you
> wouldn't be able to do that, please raise
> your hand."

In several instances, prospective jurors signaled a need to address Judge Darcy by raising a hand.  Three prospective jurors expressed concerns over fully understanding the proceedings because of language problems; another expressed concern about the severity of drug sentencing in general.  No prospective juror indicated any difficulty in understanding or accepting any of the four Zehr principles: (1) the presumption of innocence; (2) the lack of a burden on the defendant to offer evidence; (3) the State's burden to prove guilt beyond a reasonable doubt; and (4) the defendant's failure to testify cannot be held against him.

While conceding the trial court's admonishment may have informed the potential jurors en masse of the principles outlined in Zehr, the defendant contends the selection process followed by

24

No. 1-08-1304

Judge Darcy did not comply with the goal of Rule 431(b) of ensuring that each of the prospective jurors understands and accepts each of the principles. According to the defendant, the trial court's failure to make an individual inquiry of each prospective juror violated the rule. The defendant further argues that the manner in which the trial court questioned the potential jurors concerning the defendant's right not to testify did not satisfy Rule 431(b) because Judge Darcy did not inform the prospective jurors that "the defendant's failure to testify <u>cannot</u> be held against him." (Emphasis added.) Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.

We reject the defendant's contentions that Judge Darcy's questioning of the venire fell short of the dictates of Rule 431(b). In accordance with Rule 431(b), Judge Darcy directly questioned the potential jurors, "in a group" on each of the four <u>Zehr</u> principles. Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007. That some prospective jurors responded to Judge Darcy's invitation to raise a hand to express any concerns, confirms that each member of venire, after each of the <u>Zehr</u> principles was addressed, had "an opportunity to respond to specific questions concerning the principles set out" in the Rule. Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007. Judge Darcy fully complied with the dictates of Rule 431(b).

25

We also disagree with the defendant's contention that the trial court's admonishment regarding the defendant's decision not to testify against him did not comply with Rule 431(b) because it failed to track the language of the rule. We find Judge Darcy's admonishments to the venire complied with the requirements of Rule 431(b). There is no requirement that the specific language of the rule be used. See People v. Vargas, No. 1-08-0383, slip op. at 9, ("While [the trial court's approach] might not be the most succinct approach to the inquiry [that the defendant's failure to testify cannot be held against him], we nevertheless perceive that it was sufficient to ascertain the understanding and acceptance of the potential jurors of the principle articulated").

Accordingly, we find no error in the trial court's inquiry of the prospective jurors regarding the Zehr principles. Because no error occurred, there can be no plain error.

Assistance of Counsel

Lastly, the defendant claims he was denied effective assistance of counsel based on trial counsel's cross-examination of the State's forensic scientist. The defense challenged the State's case by pointing to the lack of physical evidence tying the defendant to the foil packets purchased by the undercover officers. In particular, defense counsel sought to cast doubt by noting that the foil packets were never examined for fingerprints. The State's forensic scientist, however, turned

26

the tables on defense counsel by observing that his lab did not routinely test items like the foil packets for fingerprints because, in his judgment, it was unlikely that fingerprints could be successfully lifted from the packets. On redirect examination, the State then elicited from the forensic scientist that either party could have requested a fingerprint examination of the foil packets, but neither side did.

Based on this exchange during cross-examination, the defendant contends defense counsel rendered ineffective assistance because the answer provided by the forensic scientist deflated whatever benefit the defendant might have received by the absence of fingerprint evidence. In his main brief, the defendant argues: "This undermined the defense theory by suggesting to the jury that if the results would have been exculpatory the defense would have requested testing." Premised on this claim, the defendant asks this court to grant him a new trial where presumably this testimony would not be forthcoming.

A successful claim of ineffective assistance of counsel requires a showing of both deficient representation and prejudice. Strickland v. Washington, 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068 (1984); People v. Albanese, 104 Ill. 2d 504, 525, 473 N.E.2d 1246 (1984). A defendant is denied effective assistance of counsel if counsel's performance falls "below an objective standard of reasonableness and that, but for this substandard performance, there is a

No. 1-08-1304

reasonable probability that the outcome of the proceeding would have been different." People v. McPhee, 256 Ill. App. 3d 102, 106, 628 N.E.2d 523 (1993), citing Strickland, 466 US. at 687-94, 80 L. Ed. 2d at 693-98, 104 S. Ct. at 2064-68 and Albanese, 104 Ill. 2d at 525. To prove counsel's representation was deficient, the defendant must overcome a strong presumption that counsel's performance fell within the wide range of reasonable assistance. People v. Coleman, 183 Ill. 2d 366, 398, 701 N.E.2d 1063 (1998). We review this issue de novo. People v. Chapman, 194 Ill. 2d 186, 217, 743 N.E.2d 48 (2000).

Generally, cross-examination of witnesses is a matter of trial strategy and defense counsel will not be found to have rendered ineffective assistance unless his approach is objectively unreasonable. People v. Pecoraro, 175 Ill. 2d 294, 326-27, 677 N.E.2d 875 (1997).

Defense counsel had little to cast doubt on the State's case given the nature of the evidence against the defendant. However, defense counsel pointed out to the jury, no marked currency or drugs were found on the defendant or in the vicinity. Only one of the two surveillance officers observed the defendant meet with an unidentified individual after the drug transaction and this officer did not record in his incident report his observation of this meet. Defense counsel also brought out the ability of the officers to have recorded the alleged drug purchase, which they failed to do.

28

The manner of counsel's cross-examination of the State's forensic scientist was a matter of trial strategy. Defense counsel either did not anticipate the response from the forensic scientist or believed the point was worth making in any event. We find counsel's cross-examination reasonable in light of the defense theory that the police did not adequately conduct their investigation in this case. We find no basis to second-guess defense counsel in her decision to ask the fingerprint question. We reject the defendant's characterization of counsel's cross-examination as objectively unreasonable.

We also reject the defendant's claim that defense counsel's question during cross-examination "opened the door" to the State's question on redirect that either party could have requested a fingerprint examination of the foil packet. The defendant offers no basis for his suggestion that the State could not have asked that question during its case in chief. In any event, accepting the forensic scientist's testimony that an attempt to lift fingerprints from foil packets would likely have proved unfruitful, the jury might just as well have concluded that no exculpatory evidence was available from such a request, which would explain the defendant's failure to request such an examination. In any event, that counsel undertook an unsuccessful strategy or that another attorney would have handled the cross-examination differently adds little to the claim that trial counsel rendered constitutionally deficient assistance.

See People v. Palmer, 162 Ill. 2d 465, 476, 643 N.E.2d 797 (1994)("counsel's strategic choices are virtually unchallengeable").

Under the facts of this case, the defendant is unable to overcome the strong presumption that trial counsel's performance was the product of reasonable trial strategy, not incompetence. See Coleman, 183 Ill. 2d at 398. Accordingly, the defendant is unable to satisfy the first prong of Strickland.

However, even assuming, arguendo, that counsel's alleged error constituted substandard representation, the defendant cannot show he was prejudiced because the evidence overwhelmingly pointed to his guilt. At trial, five Chicago police officers consistently identified the defendant as the individual that engaged in an on-the-street encounter with the undercover officers. Four of the officers testified that each personally witnessed the drug transaction. Officer Mar testified that the defendant asked him if he "needed anything" and in response to Officer Mar's statement that he needed "three blows," the defendant directed him to park his vehicle at a certain location. Officer Mar waited as the defendant entered a gangway and returned to the driver's side window to exchange two foil packets, which later tested positive for heroin, for $30. After the defendant and another individual were detained by the enforcement officers, Officers Mar and Contreras returned to the scene of the drug sale to determine whether either of the

detained individuals sold them the heroin packets. The officers picked out the defendant as that individual. Based on the strength of this evidence, the defendant cannot show that but for counsel's alleged deficiency during cross-examination of the State's forensic scientist regarding fingerprint testing on the foil packets, the outcome of his trial would have been different. See McPhee, 256 Ill. App. 3d at 106.

As we noted, the absence of fingerprints on the foil packets could not be taken as incriminating evidence against the defendant. Nor, would the absence of fingerprint evidence constitute evidence that the wrong person was identified by the police. Accordingly, the defendant is unable to satisfy the second prong of Strickland because he is unable to show prejudice.

We conclude counsel was not deficient in her representation of the defendant. In any event, the defendant cannot demonstrate prejudice because the evidence was overwhelmingly against him.

                              CONCLUSION

The defendant's first issue, that Judge Darcy's refusal to rule on his motion in limine to exclude his prior convictions prior to his testimony constituted error, is beyond our review because the defendant did not testify. There is no merit to the defendant's second issue as Judge Darcy complied with the voir dire requirements of Rule 431(b). We reject the defendant's

31

final issue because, based on the evidence, no showing can be made that his counsel was ineffective.  We affirm the judgment of the circuit court of Cook County.

Affirmed.

PATTI, J., concurs.

LAMPKIN, J., specially concurs.

No. 1-08-1304

JUSTICE LAMPKIN, specially concurring:

I recognize that we are bound by our supreme court's holding in Patrick that a defendant must testify to preserve for review the issue of the trial court's refusal to rule on a motion *in limine* seeking to bar the use of prior convictions for impeachment. Patrick, 233 Ill. 2d at 79. Nevertheless, I write to emphasize that trial courts, as a simple matter of fairness, need to make early rulings on motions *in limine* addressing the admissibility of prior convictions. See Patrick, 233 Ill. 2d at 73. I further emphasize that a trial court's blanket policy not to rule on a motion *in limine* in advance of the defendant's decision not to testify constitutes an abuse of discretion. Patrick, 233 Ill. 2d at 74-75. In addition, I believe our supreme court should consider the availability of relief to defendant Strickland, even though he did not testify, because the record indicates the trial court had a blanket policy not to rule on motions *in limine*.

A deferred ruling on a motion *in limine* to bar prior convictions adversely impacts the defense's strategy and the defendant's right to effective assistance of counsel. Counsel cannot adequately advise a defendant on the important tactical decision of whether to testify if counsel does not know whether prior convictions will be admissible for impeachment purposes. See Patrick, 233 Ill. 2d at 69. Furthermore, a trial court's refusal to rule handicaps counsel during *voir dire* when counsel

33

presents defendant's issues to prospective jurors and later during opening statements when counsel frames the issues to be decided by the jury. Specifically, counsel must decide whether to inform prospective and selected jurors about the defendant's prior convictions or his election to testify. See Patrick, 233 Ill. 2d at 70. The admissibility of prior convictions affects counsel's strategy in selecting prospective jurors and questioning them about their feelings on relevant matters involved in the case, like guns, street gangs or drug abuse. In addition, the uncertainty that results from deferred rulings on the admissibility of prior convictions may force a defendant to forgo testifying and, thus, hardly serves the trial's purpose to search for the truth.

Only rare cases warrant a deferred ruling on motions *in limine* to bar prior convictions, and the trial court must give reasons for any deferment based on the specific facts of the defendant's case. Patrick, 233 Ill. 2d at 73-74. During my 22 years of service as a criminal court judge, I considered motions *in limine* to bar prior convictions and conducted the Montgomery balancing test on many occasions. I never refused to rule on those motions *in limine* because a defendant needs to know which convictions may be used against him before he can make an informed and intelligent decision about whether to testify. See Patrick, 233 Ill. 2d at 69-70.

In Averett and Tucker, our supreme court has allowed leave

34

to appeal "to consider whether relief might be available to a defendant, even if he chose not to testify, if the trial court had a 'blanket policy' not to rule on the motion *in limine* in advance of the defendant deciding not testify." People v. Patrick, Nos. 104077, 104445 cons., *per curiam* order at 1 (May 27, 2009) (explaining the consistent rationale for granting review to defendants Averett and Tucker while denying Phillips leave to file a motion to reconsider the denial of his petition for rehearing). Furthermore, our supreme court has allowed motions to reconsider in cases where additional investigation uncovered "an indication of a blanket policy" and the issue was properly preserved despite the defendants' decisions not to testify. Patrick, *per curiam* order at 2 (referring to People v. Cowans, No. 105982; People v. Townsend, No. 106547; and People v. Earl, No. 107665).

Similarly, the record here indicates that the trial court merely adhered to a blanket policy not to rule when the parties filed cross motions *in limine* on the admissibility of defendant's five prior convictions to impeach his credibility should he elect to testify. At issue were defendant's convictions for the 2005 offense of aggravated unlawful use of a weapon, the 2003 offense of possession of a controlled substance, the 2001 offense of possession of a stolen motor vehicle, and the two 1999 offenses of delivery of a controlled substance. Defendant argued that the danger of prejudice

outweighed any probative value, that some of his prior crimes were similar to the current charge, and that the jury would misuse the information as evidence of defendant's propensity to possess and deliver narcotics. The trial court stated that it relied on Luce and would have to decide the matter if and when defendant testified "in order to make the proper ruling." Furthermore, the trial court granted the State's motion *in limine* to prohibit defendant from arguing that he pled guilty in prior cases because he was in fact guilty but proceeded to trial in his current case due to his innocence.

The trial court's reliance on Luce was misplaced. Luce, contrary to the trial court's implication, does not stand for the broad proposition that a trial court may or should weigh the probative value and prejudicial effect after the defendant has testified. See People v. Holloway, 393 Ill. App. 3d 317, 321 n.2, 912 N.E.2d 799, 802 n.2 (2009). Rather, Luce held that a defendant who does not testify at trial may not challenge on appeal an *in limine* ruling respecting the admission of a prior conviction for purposes of impeachment under Rule 609(a) of the Federal Rules of Evidence. Luce, 469 U.S. at 42-43, 83 L. Ed. 2d at 447-48, 105 S. Ct. at 463-64. That narrower holding was based on the reviewing court's inability to adequately evaluate the correctness of the trial court's ruling outside the specific factual context of the trial as it unfolded, and the handicap posed to the reviewing court's harmless-error determination when

36

No. 1-08-1304

a defendant does not testify.  Luce, 469 U.S. at 41-42, 83 L. Ed. 2d at 447-48, 105 S. Ct. at 463.

The State argues that this case is controlled by our supreme court's ruling in Patrick that defendant Ezekiel Phillips failed to preserve this same issue for review because he chose not to testify.  See Patrick, 233 Ill. 2d at 77. Defendant's situation, however, is distinguishable from Phillips' case, where the trial court did not adhere to a blanket policy not to rule but, rather, partially granted the motion *in limine* to bar one of Phillips' prior convictions while deferring on the other three.  Here, in contrast, the trial court did not address any of defendant's five convictions, despite the obvious danger of prejudice from his three drug convictions.

As in Patrick, the trial court here failed to give a reason for its deferred ruling based on the specific facts of defendant's case.  Unlike the rare situation where a trial court may not have sufficient information to weigh the probative value and prejudicial effect before a defendant testifies, the record here does not indicate a sound basis for deferment.  The trial court certainly had enough information to conduct the Montgomery balancing test where the prejudicial effect of the use of defendant's three drug convictions for impeachment purposes was obvious.  Consequently, the record indicates the trial court adhered to a blanket policy to defer ruling on motions *in limine*

37

No. 1-08-1304

to preclude evidence of prior convictions until after hearing the defendant's testimony.

### REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

**PEOPLE OF THE STATE OF ILLINOIS**
    **Plaintiff-Appellee,**

**v.**

**LEONARD STRICKLAND,**
    **Defendant-Appellant.**

**No. 1-08-1304**

**Appellate Court of Illinois**
**First District, First Division**

**Filed: March 8, 2010**

**JUSTICE GARCIA delivered the opinion of the court.**

**PATTI , J., concurs.**
**LAMPKIN, J., specially concurs.**

**Appeal from the Circuit Court of Cook County**
**Honorable Daniel P. Darcy, Judge Presiding**

| | |
|---|---|
| **For PLAINTIFF-APPELLEE** | **Anita Alvarez, State's Attorney, County of Cook** |
| | **James E. Fitzgerald**<br>**Douglas P. Harvath**<br>**Carol M. Gaines**<br>**Brian K. Hodes**<br>**Assistant State's Attorneys, Of Counsel**<br>**Richard J. Daley Center, Room 309**<br>**Chicago, IL 60602** |
| **For DEFENDANT-APPELLANT** | **Michael J. Pelletier, State Appellate Defender**<br>**Patricia Unsinn, Deputy Defender** |
| | **Holly J. K. Schroetlin**<br>**Assistant Appellate Defender** |

**Office of the State Appellate Defender**
**203 N. LaSalle Street, 24th Floor**
**Chicago, IL 60601**