THIRD DIVISION
November 24, 2010

No. 1-09-0902

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| JERALD DIGBY, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE QUINN delivered the opinion of the court:

Following a jury trial, defendant Jerald Digby was found guilty of delivery of a controlled substance and sentenced to nine years' imprisonment. On appeal, defendant contends that his conviction should be reversed and his cause remanded for a new trial because the trial court failed to strictly comply with Supreme Court Rule 431(b) (Official Reports Advanced Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007).

The record shows that defendant was charged with delivery of a controlled substance in connection with an incident on February 27, 2008, on the north side of Chicago. Defendant elected a jury trial, and as *voir dire* began, the trial court addressed the venire and explained that defendant is presumed to be innocent of the charge against him and that this presumption is not overcome unless the jury is convinced from all the evidence in the case and beyond a reasonable doubt that defendant is guilty. The

court further explained that defendant is not required to prove his innocence or present any evidence at all.

The venire was subsequently sworn, and the court advised the prospective jurors of the questions which would be asked of them as a group and individually, and the procedure that would be followed.  The court then stated:

> "First, I will ask questions of you as a group.  If *** [the answer to] any of these questions is yes, please raise your hand. ***

> Defendant is presumed innocent until the jury during deliberations determines from all the evidence that the Defendant is guilty beyond a reasonable doubt.  Does anyone here have a problem with that presumption?  Okay. No hands raised.  Collective answer is no.

> The State has the burden of proving the Defendant guilty beyond a reasonable doubt in the criminal case.  Does anyone disagree with requiring the State to meet that burden? I see no hand raised.  Collective answer is no.

> Defendant does not have to present any evidence at all in this case.  Defendant may rely upon the presumption of innocence.  Does

1-09-0902

anyone have any difficulty with extending the Defendant that presumption during trial? Again no hands are raise[d] collective answer is no.

The Defendant does not have to testify. Is there anyone who would hold it against the Defendant if he chose not to testify? Okay. Again there are no hands raised. Collective answer is no."

The court then had the clerk read the names of the first 26 potential jurors, and the first 14 were seated in jury box. The court, however, addressed the 26 members of the venire as follows:

"I have to ask this question again. This is about the basic principle of law. Defendant is presumed innocent until the jury during deliberations determines from all the evidence that the Defendant is guilty beyond a reasonable doubt. Does anyone have a problem with that presumption? The 26 here collective answer is no.

The State has the burden of [proving] the Defendant guilty beyond a reasonable doubt in a criminal case. Does anyone here

- 3 -

disagree with the requirement to make that burden? No hands are raised. Collective answer is no.

Defendant does not have to present any evidence at all. Defendant may rely upon the presumption of innocen[ce]. Does anyone have any difficulty extending the Defendant that presumption during the trial? No hands are raised. Collective answer is no.

Defendant does not have to testify. Is there anyone here who would hold it against the Defendant if he or she chose not to testify? No hands are raised collective answer is no."

The trial court further admonished the prospective jurors of other basic principles of law, followed by individual questions.

After the jury was empaneled, the State presented evidence that on February 27, 2008, defendant sold crack cocaine to undercover Chicago police officer Loffredo in exchange for $20. Officer Goldsmith, who was working as a surveillance officer that day, observed defendant engage in a brief hand-to-hand exchange with officer Loffredo at the corner of Argyle and Kenmore Streets. Officer Loffredo approached defendant and asked him if he was "straight," a street term meaning, "Are you selling

narcotics?" Defendant asked the officer what he was looking for, and Officer Loffredo responded that he was "looking for two," which meant that he was looking for $20 worth of narcotics. Defendant then spit into his hand two plastic bags containing a white substance and handed them to Officer Loffredo, who gave defendant $20 in prerecorded funds. After the officer walked away and gave a positive signal to Officer Goldsmith, he was picked up by undercover officer Marozas in a covert vehicle, where he contacted other officers by radio.

Sergeant Hallihan and Officer Baez responded to officer Loffredo's transmission and drove to that location, Officer Goldsmith pointed them to 4837 North Kenmore Street, and when Sergeant Hallihan saw defendant in a basement, defendant put money in his mouth, chewed and swallowed it. Sergeant Hallihan and Officer Baez handcuffed defendant and took him out to the sidewalk where he was identified by Officer Loffredo as the man who had sold him the narcotics. The sergeant arrested defendant, and Officer Baez recovered $69 from him. Subsequently, forensic chemist Jason George conducted tests on the plastic bags sold to Officer Loffredo and determined that they tested positive for 0.1 gram of cocaine.

After the State rested, the trial court denied defendant's motion for a directed verdict. The defense presented the testimony of criminal investigator Friday Clements, who testified

that he took a picture of a police camera from the corner of Kenmore and Argyle Streets. The parties stipulated that a police camera was located at 1101 West Argyle Street on the date of the incident and that police had no video of the narcotics transaction.

After closing arguments were presented, the jury was instructed, in pertinent part, that defendant is presumed innocent, that the State has the burden of proving him guilty beyond a reasonable doubt, and that defendant is not required to prove his innocence. The jury then found defendant guilty of delivery of a controlled substance, and the trial court sentenced him as a Class X offender to nine years' imprisonment.

The sole issue in this appeal is whether the trial court complied with Supreme Court Rule 431(b), as amended in 2007. The rule requires the trial court to ask each prospective juror, individually or in a group, whether he or she understands and accepts that (1) defendant is presumed innocent of the charge against him; (2) before defendant can be convicted, the State must prove him guilty beyond a reasonable doubt; (3) defendant is not required to offer any evidence on his behalf; and (4) defendant's failure to testify cannot be held against him.

The supreme court recently addressed the proper application of this rule in People v. Thompson, 109033, slip op. at 7-13 (October 21, 2010). There, the court held that the rule mandates

a "specific question and response process," in which the jurors, either individually or in a group, are asked whether they understand and accept the enumerated principles. Thompson, slip op. at 6. The goal of Rule 431(b) questioning is to help ensure a fair trial and impartial jury. Thompson, slip op. at 9.

In this appeal, defendant does not dispute that the court addressed each of the four principles with the venire. Rather, he notes that the court did not use the words "understand" and "accept," but instead variously asked the jurors whether they "had a problem" with certain principles, if they "disagreed" with them, or whether they would hold defendant's failure to testify against him. Defendant argues that this language was insufficient to satisfy the rule's requirement that each juror be questioned as to his or her understanding and acceptance of the enumerated principles. He also complains that the court's request for a show of hands was insufficient to ascertain the jurors' responses. For the following reasons, we find that the court's questioning complied with Rule 431(b).

This court has held that Rule 431(b) does not dictate a particular methodology for establishing the venire's understanding or acceptance of those principles. People v. Vargas, 396 Ill. App. 3d 465, 472 (2009). In doing so, we have noted that this rule does not set out principles in the form of questions to be asked *in haec verba*, and does not provide

" 'magic words' " or " 'catechism' " to ensure the court's compliance.  Vargas, 396 Ill. App. 3d at 472.  For example, in People v. Ingram, 401 Ill. App. 3d 382, 393 (2010), we held that the trial court met the requirements of Rule 431(b) where it admonished the potential jurors *en masse* of the four principles, then asked them whether they had any " 'difficulty or quarrel' " with each of the four principles.  We have also found compliance where the court asked the venire whether each juror would hold defendant's decision against him if he decided not to testify.  People v. Strickland, 399 Ill. App. 3d 590, 603-04 (2010).

We find no substantive difference in this case, where the venire members were asked if they "had a problem" with the presumption that defendant is innocent, if they "disagreed" with the State's burden of proving defendant guilty, and if they would hold defendant's failure to testify "against" him.  Although the court did not use the precise language of Rule 431(b), the words it did use were appropriate and clearly indicated to the prospective jurors that the court was asking them whether they understood and accepted the principles enumerated in the rule.

Nor are we persuaded that the court violated the rule by questioning the jurors collectively and asking for their response through a show of hands.  Defendant argues that, to ensure compliance with Rule 431(b), the court should address each juror individually with respect to the four principles and require the

juror to respond yes or no to (1) whether the juror understands the principle and (2) whether the juror accepts the principle. We reject this argument based on the supreme court's holding in Thompson that the court may perform the questioning in a group, as long as each juror is given an "opportunity" to respond. Thompson, slip op. at 6. If the supreme court intended to require a verbal response from each juror, it would have said so. Instead, it held that an opportunity to respond was sufficient, implicitly recognizing that the juror may forgo that opportunity and indicate his agreement with the stated principle by remaining silent. Finally, asking for a show of hands is a commonly accepted method of eliciting a response from a group of people. We find nothing inherently unreliable in this practice.

Moreover, even if we were to find that the court violated Rule 431(b), defendant would fare no better. It is undisputed that defendant forfeited this issue by failing to object at trial and to raise the issue in a posttrial motion. People v. Piatkowski, 225 Ill. 2d 551, 564 (2007). The supreme court in Thompson held that a violation of the rule is not structural error requiring automatic reversal. Thompson, slip op. at 9-10. Nor does it satisfy the second prong of the plain error analysis, which allows review of errors that affect the fairness of the trial and challenge the integrity of the judicial process. Thompson, slip op. at 11-12. Instead, the supreme court

recognized that "the failure to conduct Rule 431(b) questioning does not necessarily result in a biased jury ***." Thompson, slip op. at 12. "Although the [2007] amendment to the rule serves to promote the selection of an impartial jury by making the questioning mandatory, Rule 431(b) questioning is only one method of helping to ensure the selection of an impartial jury." Thompson, slip op. at 12. The Thompson court went on to find that, despite the fact that the trial court violated Rule 431(b) by completely failing to question the jurors on one of the principles and not asking whether they accepted another, defendant was unable to show that the violation "resulted in a biased jury." Thompson, slip op. at 13. Accordingly, the court refused to excuse defendant's forfeiture of the issue.

The same result would maintain here, where the alleged noncompliance with the rule did not rise to the level of the defects considered in Thompson. As stated above, we find that the court's questioning complied with Rule 431(b), and there is no indication in the record that its failure to use the precise verbiage of the rule resulted in a biased jury. Under these circumstances, defendant's claim is forfeited.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

MURPHY and STEELE, JJ., concur.