(No. 57683.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. KENNETH ZEHR, Appellee.

*Opinion filed March 23, 1984.—Modified on denial of rehearing September 28, 1984.*

RYAN, C.J., and UNDERWOOD, J., dissenting.

Neil F. Hartigan and Tyrone C. Fahner, Attorneys General, of Springfield, and Gary L. Peterlin, State's Attorney, of Ottawa (Michael B. Weinstein, David E. Bindi and Mark L. Rotert, Assistant Attorneys General, of Chicago, and John X. Breslin and Terry A Mertel, of the State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

Robert Agostinelli, Deputy Defender, and Peter A. Carusona, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa (James Leo Keely, of counsel), for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

In an indictment returned in the circuit court of La Salle County, defendant, Kenneth Zehr, was charged with home invasion, burglary, and aggravated battery (Ill. Rev. Stat. 1979, ch. 38, pars. 12—11(a)(2), 19—1, 12—4(b)(10)) and in a jury trial was convicted of all three offenses. Defendant was sentenced to concurrent terms of imprisonment of 22 years for the home invasion, six years for the burglary, and 3½ years for the aggravated

battery. The appellate court reversed and remanded for a new trial (110 Ill. App. 3d 458), and we allowed the People's petition for leave to appeal (87 Ill. 2d R. 315).

In reversing the judgment, the appellate court held that the circuit court had abused its discretion in refusing to include in its *voir dire* examination of the jury three questions submitted by defendant, and that it had erred in permitting the use of the videotaped deposition of Mrs. Hazel Fox, the complaining witness.

Mrs. Fox testified that on the evening of October 27, 1980, defendant and another person came to her house and attempted to talk to her about an old car that she had for sale. She refused their request that she come outside and show them the car, and they left. Later, at approximately 1 o'clock on the morning of the 28th, she went to the basement of her house to check the furnace. As she approached the furnace, she heard a rustling noise behind a shower curtain in the downstairs bathroom. Defendant and the man who was with him earlier then showed themselves in the doorway of the bathroom, and after they paused for a second, defendant knocked off her glasses, effectively blinding her. She was restrained with clothesline wire, knocked to the floor, and gagged. She stated that defendant, in an attempt to suffocate her, pushed her face and head into some bedding. Defendant and his companion left her in the basement and went upstairs. They returned to the basement, and defendant kicked and pushed her again. Defendant left her, went upstairs, and then returned to push and kick her three more times. After the last pushing-and-kicking incident, she heard what she believed to be defendant's truck being driven away. She removed the restraints from her wrists and ankles and, upon doing so, crawled up to her bedroom, found a spare pair of glasses, and telephoned for help.

The People adduced testimony that defendant was in

possession of certain items that Mrs. Fox testified were missing from her house, and that, in a police lineup, she identified defendant as the man who had attacked her. Defendant introduced testimony that he was in possession of the items prior to the date of the alleged burglary and that his truck, which Mrs. Fox said she had heard being driven from her home, was in the shop at that time. Defendant did not testify.

The supplemental questions tendered by defendant were:

"1. If at the close of all the evidence and after you have heard arguments of counsel you believe that the State has failed to sustain the burden of proof and has failed to prove the defendant guilty beyond a reasonable doubt, would you have any hesitation whatsoever in returning a verdict of Not Guilty?

2. If the defendant, Mr. Zehr, decides not to testify in his own behalf, would you hold it against him?

3. Do you understand that the defendant is presumed innocent and does not have to offer any evidence in his own behalf, but must be proven guilty beyond a reasonable doubt by the State?"

Supreme Court Rule 234 provides:

"The court shall conduct the *voir dire* examination of prospective jurors by putting to them questions it thinks appropriate touching their qualifications to serve as jurors in the case on trial. The court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate, or may permit the parties to supplement the examination by such direct inquiry as the court deems proper. Questions shall not directly or indirectly concern matters of law or instructions." 87 Ill. 2d R. 234.

The People contend that because the questions pertained to matters of law or instructions, the circuit court correctly refused to ask them. They argue that the given instructions adequately advised the jurors concerning the

burden of proof and the presumption of innocence (Illinois Pattern Jury Instruction (IPI), Criminal, No. 2.03 (2d ed. 1981)) and that they should not consider the fact that the defendant did not testify (IPI Criminal No. 2.04). They point out, too, that the jurors were asked whether they would follow the law as given them by the court even though they might personally disagree with it and whether any reason, moral, religious or otherwise, would prevent their being fair and impartial. Defendant argues that assuming that the questions pertain indirectly to questions of law "each of them goes to the heart of a particular bias or prejudice."

We are of the opinion that essential to the qualification of jurors in a criminal case is that they know that a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him. If a juror has a prejudice against any of these basic guarantees, an instruction given at the end of the trial will have little curative effect. It is also vital to the selection of a fair and impartial jury that a juror who finds that the State has failed to sustain its burden of proof of guilt beyond a reasonable doubt have no prejudices against returning a verdict of not guilty. We note parenthetically that it is equally important that a juror who finds that the State has sustained its burden of proof have no prejudice against returning a verdict of guilty. We agree with the appellate court that "[e]ach of these questions goes to the heart of a particular bias or prejudice which would deprive defendant of his right to a fair and impartial jury" (110 Ill. App. 3d 458, 461), and although they need not have been asked in precisely the form submitted, the subject matter of the questions should have been covered in the course of interrogation on *voir dire*. The refusal to ask the questions resulted in

prejudicial error which required reversal of the judgment.

Because the cause is remanded for a new trial we deem it essential to consider the question of the use of the videotaped deposition. Approximately two weeks before trial, the People filed a motion for the taking of the videotaped evidence deposition of Hazel Fox, the victim and only eyewitness to the crimes. The People stated that Mrs. Fox was a cardiac patient receiving medical care, and argued that, because of her deteriorating health and the possibility that she might be unavailable to testify at trial, a deposition was necessary to preserve her testimony. The People asserted that a videotaped deposition was necessary to show the demeanor of the witness while testifying. Defendant contended that a deposition was unnecessary and that the videotape, if it were shown at the trial, would call undue attention to Mrs. Fox' testimony.

The circuit court allowed the People's motion and ordered the deposition taken by videotape and transcribed by a court reporter. Both parties participated in the deposition. The deposition was taken on August 1, 1981, in the courtroom with the trial judge present. On August 11, 1981, the morning of the trial, the People moved to admit the videotaped evidence deposition in lieu of Mrs. Fox' live testimony. In support of the motion, the victim's treating physician, Dr. Anton Giger, testified that he had known Mrs. Fox since June 1981, when he had taken over the practice of Dr. Maierhofer, who had been her physician for many years. Dr. Giger had seen Mrs. Fox on the morning of August 10, apparently for the first time since June 8. On August 10 she was complaining of chest discomfort and shortness of breath. At that time he considered her to be "in moderate distress." He was of the opinion that there had been some deterioration in her physical condition since June 8. He had ·also

seen her on the morning of August 11. There was no prospect of improvement in her condition, and the best that could be expected was that there would be no further deterioration. In his opinion, Mrs. Fox would not at any time in the future be in sufficiently good condition physically to testify.

On cross-examination, Dr. Giger expressed surprise that Mrs. Fox had been able to appear for deposition on August 1. On further questioning, he agreed that, if she were observed for a period of two weeks, it could be determined whether her condition had improved sufficiently so that she could appear and testify. Defendant presented no evidence in opposition to the motion but requested that the cause be continued to allow further observation of Mrs. Fox' condition. Defendant's motion was denied, and the People's motion to admit the videotaped deposition was allowed.

The People contend that the appellate court erred in holding that the admission of the videotape was reversible error. They argue that they had shown "good cause" under Rule 206(e) (87 Ill. 2d R. 206(e)) to allow the admission of the videotape. They assert that, since Mrs. Fox was the sole occurrence witness and victim, it was especially important for the jury to be able to observe her demeanor while testifying. They argue, too, that defendant raised no questions concerning the accuracy of the videotape, and cite numerous cases to show that videotaped depositions are gaining widespread acceptance in other courts.

Defendant points out that if witness demeanor is sufficient to establish "good cause," such "good cause" would be present in every deposition. Defendant also contends that neither a written nor a videotaped deposition was properly admissible into evidence since it was not shown that Mrs. Fox would not be able to testify at a later date.

The taking of evidence depositions in criminal cases is governed by the rules relevant to evidence depositions in civil cases. (87 Ill. 2d R. 414(b).) The provision here pertinent is:

> "The testimony shall be taken stenographically or by sound-recording device, and upon agreement of the parties, or by order of the court for good cause shown, may be taken by audio-visual recording device. The testimony shall be transcribed at the request of any party." (87 Ill. 2d R. 206(e).)

Rule 206(e) permits the taking and use of depositions by the usual court reporting methods (in written or audio form) but requires the agreement of the parties or "order of the court for good cause shown" for the use of a videotape recording device. The only reason offered by the People for its use was to enable the jury to view the witness' demeanor. Although, as noted by the appellate court (110 Ill. App. 3d 458, 460), the jury may possibly be in a better position to observe the witness' demeanor by means of videotape, that reason would be present in virtually every case where a witness is unavailable. It is the opinion of Justices Ward and Clark and the author of this opinion that witness demeanor alone, as a reason for the use of videotape, would render the "good cause" requirement in the rule meaningless, and that while the viewing of a witness by the jury may possibly be of importance in some cases, the circumstances here do not show the "good cause" required by the rule. A majority of the court, however, holds that the determination of the question whether to permit use of the videotaped deposition was within the discretion of the circuit court and that the record shows no abuse of discretion. The holding of the appellate court with respect to the use of the deposition was therefore in error.

Defendant contends too that the use of any deposition of Mrs. Fox at trial was improper because it was not

proved that she would not be available at a later date. There was sufficient evidence to sustain a finding that Mrs. Fox could not appear on August 11, 1981, and the question presented was whether the court erred in denying defendant's motion to continue the cause for two weeks in order to permit Dr. Giger to further observe Mrs. Fox' condition. A motion for continuance is addressed to the sound discretion of the circuit court, and no abuse of discretion is shown by this record.

Defendant contends that the testimony of a deputy sheriff that there was an older "mug shot" of defendant on file denied him a fair trial. The record shows that the single reference to the "mug shot" was elicited on cross-examination, there was no further reference to it, and defendant did not object, move to strike the statement, or request a mistrial. While it is true that testimony which implies prior criminal activity is ordinarily inadmissible, any error here was harmless or waived.

For the reasons stated, the judgment of the appellate court is affirmed, and the cause is remanded to the circuit court of La Salle County for a new trial.

*Affirmed and remanded.*

CHIEF JUSTICE RYAN, dissenting:

I must dissent from the holding that the trial court erred in not asking the jury the questions submitted by the defendant. The opinion quotes Rule 234 (87 Ill. 2d R. 234), which, in the last sentence, provides:

"Questions shall not directly or indirectly concern matters of law or instructions."

The three questions defendant submitted are set forth in the opinion. The first relates to the State's duty to prove the defendant guilty beyond a reasonable doubt. The second relates to the drawing of inferences from defendant's failure to testify. The third relates to the presumption of innocence. The first and third questions

are covered by Illinois Pattern Jury Instruction (IPI), Criminal, No. 2.03 (2d ed. 1971), which was given by the court. That instruction covers the presumption of innocence and the burden of the State to prove the defendant guilty beyond a reasonable doubt. The second question tendered is covered by IPI Criminal No. 2.04, which instructs the jury that the fact that the defendant did not testify cannot be considered in any way in arriving at the verdict. Thus, all three questions tendered by the defendant were covered by instructions on the law that were given to the jury by the court. The judge was thus precluded by our Rule 234 (87 Ill. 2d R. 234) from entertaining the questions tendered. He complied with our rule. Now, a majority of this court holds that the trial court erred in following our rule and conducting a *voir dire* examination in the very manner this court has directed.

The lengthy discussion contained in historical and practice notes to Rule 234 contained in Smith-Hurd Annotated Statutes (Ill. Ann. Stat., ch. 110A, par. 234, Historical and Practice Notes, at 258 (Smith-Hurd 1968)) reveals that the rationale of this rule is to prohibit the asking of questions of the type tendered by the defendant. The holding of this court today could well lead to a return to the very practice which Rule 234 was designed to eliminate. Those of us who presided as trial judges prior to the adoption of Rule 234 can well remember the interminable *voir dire* examinations conducted by counsel for both sides who propounded questions on the law in a manner slanted to benefit the side propounding the questions. In our case, if the defendant is entitled to have the questions submitted asked, then, of course, the prosecution has a right to also propound questions relating to the law, possibly exploring the reverse side of the same legal proposition by submitting a question phrased in a manner favorable to the prosecution. Also, by open-

ing the door, as this opinion does, both sides are invited to tender, and the judge is obliged to propound to the jury, questions on any number of questions of law that may be involved in a case.

Rule 234 has performed the role for which it was designed in a very satisfactory manner. It should not be forsaken, but should be applied as the trial judge applied it in this case. For these reasons, I cannot agree with my colleagues that the trial court erred in not propounding to the jury the three questions tendered by the defendant.

JUSTICE UNDERWOOD joins in this dissent.