THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES WHEELER, Defendant-Appellant.

First District (1st Division)    No. 1—08—1370

Opinion filed March 31, 2010.

HALL, P.J., dissenting.

Michael J. Pelletier, Patricia Unsinn, and Adrienne River, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (James E. Fitzgerald, Mary L. Boland, and Brian W. Reidy, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GARCIA delivered the opinion of the court:

The defendant, James Wheeler, was convicted of residential burglary by a jury and sentenced to 15 years' imprisonment. He seeks automatic reversal under the plain error doctrine based on the trial judge's alleged violation of Illinois Supreme Court Rule 431(b) (eff. May 1, 2007) for failing to establish that each prospective juror understood and agreed with the four principles enunciated by our supreme court in *People v. Zehr*, 103 Ill. 2d 472, 469 N.E.2d 1062 (1984). The State counters the trial judge complied with Rule 431(b) and, in any event, the alleged error is not a second-prong plain error, triggering automatic reversal.

We find the trial judge violated Rule 431(b), but the violation did not challenge the integrity of the trial process such that automatic reversal is triggered. We follow the line of decisions since *People v. Glasper*, 234 Ill. 2d 173, 917 N.E.2d 401 (2009), holding a violation of Rule 431(b) is not a second-prong plain error. Because the defendant makes no claim that the Rule 431(b) error is a first-prong plain error, the claimed error is forfeited. We affirm.

## BACKGROUND

In the early morning of January 15, 2006, Daryl James Mortensen returned to his home in a western suburb to find some of his belongings missing and one of his windows open. Mortensen called the village police, who dusted his apartment for fingerprints. The police obtained one set of prints from a vase that had been in Mortensen's sole custody for at least seven years. Mortensen had used the vase to store coins but the vase was empty when he returned home.

On May 7, 2006, the defendant was arrested outside his Chicago apartment. Edward Rottman, a fingerprint examiner for the Illinois State Police, found that two of the fingerprints lifted from the vase matched the defendant's. After a trial in April 2008, a jury found the defendant guilty of residential burglary.

In the course of jury selection, Judge Lawrence W. Terrell admonished the venire of the four principles set forth in Illinois Supreme Court Rule 431(b) (eff. May 1, 2007). The judge informed the venire:

> "Every defendant in our country is presumed to be innocent of the charges. This presumption remains with the defendant throughout every stage of the trial, even through your deliberations on your verdict. ***
>
> The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case.
>
> A defendant is not required to prove his or her innocence, nor is a defendant required to present any evidence at all. Any defendant may simply rely on the presumption of innocence.
>
> Moreover, every defendant has a Constitutional right not to testify, and the jury cannot draw any inference of guilt if the defendant fails to testify."

After announcing these principles, the judge discussed the division of labor between judge and jury, the requirement that the jury arrive at a decision only after hearing all evidence and arguments, and the prohibition against allowing one's prejudices or sympathies to taint the verdict. He then discussed administrative matters, such as the purpose of objections, the requirement that jurors not discuss the case outside of court, and the procedure for recesses and lunch breaks.

Only after a relatively lengthy discussion of matters unconnected to the *Zehr* principles he announced earlier did the trial judge question the venire directly. He asked the first group of prospective jurors: "The principles of law I described earlier, are you in agreement with those principles?" Each eventual juror answered affirmatively. In questioning the second group of prospective jurors, the judge asked

whether they agreed with "the presumption of innocence and the burden of proof" in addition to "the principles of law I described earlier." Each eventual juror answered affirmatively.

The selected jurors found the defendant guilty; he was sentenced to 15 years in prison. This timely appeal followed.

## ANALYSIS

### Compliance With Rule 431(b)

Underlying his claim of plain error, the defendant contends the trial judge erred by not "strictly [complying] with amended Supreme Court Rule 431(b)." The State responds the trial judge followed Rule 431(b) by noting strict compliance is not required: the rule does not require " 'magic words' or 'catechism.' "

We examine whether the trial judge complied with Rule 431(b), but only to determine whether plain error occurred. We find no aid to our plain error analysis to decide whether the rule requires "strict" or, as the State suggests, substantial compliance. See *People v. Garstecki*, 234 Ill. 2d 430, 445, 917 N.E.2d 465 (2009) ("Because the trial court complied with the rule's mandatory obligation, we are not presented with the question of whether the rule is mandatory or directory"). Rule 431(b) mandates that each prospective juror be asked about his or her acceptance and understanding of each of the essential principles, now referred to as the *Zehr* questions. In the course of making such an inquiry, the method employed by the trial judge must afford "each juror an opportunity to respond to specific questions concerning the principles set out in this section." Ill. S. Ct. R. 431(b) (eff. May 1, 2007). We examine the record to determine whether the clear mandates of the rule were followed. Both sides agree that "[t]he issue of compliance with a supreme court rule is reviewed *de novo*." *People v. Gardner*, 347 Ill. App. 3d 578, 583, 808 N.E.2d 10 (2004).

In 1984, our supreme court declared: "[E]ssential to the qualification of jurors in a criminal case is that they know that a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him." *Zehr*, 103 Ill. 2d at 477.

In 1997, the supreme court amended Rule 431(b) to require the *Zehr* questions be asked when requested by the defendant by replacing the word "may" with "shall." 177 Ill. 2d R. 431(b). In 2007, the supreme court again amended Rule 431(b) to place "an affirmative *sua sponte* duty on the trial courts to ask potential jurors in each and every case whether they understand and accept the *Zehr* principles."

*People v. Graham*, 393 Ill. App. 3d 268, 273, 913 N.E.2d 99 (2009); Ill. S. Ct. R. 431(b) (eff. May 1, 2007). The Committee Comments continue to state that the rule "seeks to end the practice where the judge makes a broad statement of the applicable law followed by a general question concerning the juror's willingness to follow the law." 177 Ill. 2d R. 431(b), Committee Comments, at lxxix.

Here, the trial judge recited each of the four *Zehr* principles to the entire venire, followed by a recitation of matters not pertaining to the *Zehr* principles. After this relatively lengthy recitation, he proceeded to ask the first group of prospective jurors whether they agreed with "[t]he principles of law I described earlier." In addition to this question, the trial judge asked the second group of prospective jurors whether they agreed specifically with "the presumption of innocence and the burden of proof." As the State points out: "Of the 14 jurors selected, 9 jurors were asked if they agreed with the principles of law discussed earlier. With the other jurors selected, the court asked the jurors if they agreed with the principles of law discussed earlier, and specifically stated the presumption of innocence and the burden of proof."

We find the trial judge's inquiry of the first nine jurors, as to whether they agreed with the "principles" he had addressed earlier, fell short of the inquiry required by Rule 431(b). The question put to this first group of prospective jurors was much like "a general question concerning the juror's willingness to follow the law" that Rule 431(b) sought to prohibit. 177 Ill. 2d R. 431(b), Committee Comments, at lxxix; *People v. Arredondo*, 394 Ill. App. 3d 944, 953-54, 916 N.E.2d 1263 (2009) (trial judge's general inquiry about the "appropriate verdict form" was general questioning concerning the jurors' willingness to follow the law, which Rule 431(b) sought to prohibit).

To be clear, we do not suggest that the rule requires questioning of each prospective juror, either individually or in a group, regarding the acceptance and understanding of each *Zehr* principle, although following this method would obviate plain error review on appeal. See *People v. Strickland*, 399 Ill. App. 3d 590, 603-04 (2010) (rejecting claim that the *voir dire* method employed by the circuit court violated Rule 431(b)).

We do find, however, that the questioning of the prospective jurors about each *Zehr* principal must be timely connected to an "opportunity to respond to specific questions concerning the principles." Ill. S. Ct. R. 431(b) (eff. May 1, 2007). As our supreme court stated in *Zehr*, "essential to the qualification of jurors in a criminal case" is that they understand and accept each of the *Zehr* principles. *Zehr*, 103 Ill. 2d at

477. To ensure that juror qualification is ascertained, we believe informing the prospective jurors of the *Zehr* principles must precede closely in time with "an opportunity to respond to *specific questions* concerning the principles." (Emphasis added.) Ill. S. Ct. R. 431(b) (eff. May 1, 2007).

We construe the reference to "specific questions" in Rule 431(b) to mean that the questions must specifically reference the *Zehr* principles. This may be done by the question itself stating the principle and asking the prospective jurors whether they accept and understand the principle or the specific question regarding their understanding and acceptance may timely follow a recitation of each of the principles. See *Strickland*, 399 Ill. App. 3d at 603-04 (where the circuit court employed the latter method).

It is clear, however, that in order to connect the *Zehr* principles to the opportunity of the venire to express their understanding and acceptance of each of the principles, the recitation of the principles and the questioning of the venire must be connected closely in time. We find the general question concerning the prospective jurors' acceptance of "the principles of law I described earlier" to be inadequate because the trial judge gave a lengthy recitation of matters outside the scope of *Zehr* (15 pages of transcript) before he asked this question. As a consequence, the trial judge failed to give the first nine jurors "an opportunity to respond to specific questions concerning [each of the *Zehr*] principles." Ill. S. Ct. R. 431(b) (eff. May 1, 2007). Supreme court rules "are not aspirational. They are not suggestions. They have the force of law, and the presumption must be that they will be obeyed and enforced as written." *Bright v. Dicke*, 166 Ill. 2d 204, 210, 652 N.E.2d 275 (1995).

We find that the remaining five jurors were given an opportunity to respond to specific questions regarding "the presumption of innocence and the burden of proof," as the State points out. However, these eventual jurors were never asked specific questions concerning the remaining two *Zehr* principles. The method of inquiry the trial judge followed did not comply with the mandates of Rule 431(b) because the remaining five jurors were never asked specific questions concerning each of the four *Zehr* principles. See *Glasper*, 234 Ill. 2d at 189 ("[t]he trial court committed error when it ignored our long-standing precedent and our rules by refusing to question the venire in accordance with Rule 431(b)(4)"); *People v. Magallanes*, 397 Ill. App. 3d 72, 83 (2009) ("the court failed to ascertain whether all of the potential jurors understood and accepted the fourth *Zehr* principle").

Based on the record before us, we find the trial judge violated Supreme Court Rule 431(b) by asking the prospective jurors whether they agreed with "[t]he principles of law," he described much earlier, the sort of general question Rule 431(b) sought to prohibit. The trial judge violated Rule 431(b) when he did not inform the prospective jurors of all four *Zehr* principles followed by a timely opportunity to respond to specific questions concerning their acceptance and understanding of the principles set out in the rule.

## Plain Error

The parties agree that defense counsel did not object to the judge's failure to comply with Supreme Court Rule 431(b) and defense counsel did not raise the trial judge's violation in his posttrial motion. "An unbroken line of precedent mandates that a defendant must object to claimed errors at trial and raise them in his posttrial motions." *People v. Martinez*, 386 Ill. App. 3d 153, 163, 897 N.E.2d 879 (2008), citing *People v. Banks*, 161 Ill. 2d 119, 143, 641 N.E.2d 331 (1994). "Otherwise, they are procedurally defaulted or forfeited." *Martinez*, 386 Ill. App. 3d at 163, citing *People v. Naylor*, 229 Ill. 2d 584, 893 N.E.2d 653 (2008).

The defendant maintains, however, that the omission by the trial judge is reviewable under the plain error doctrine. See *People v. Hammonds*, 399 Ill. App. 3d 927, 948 (2010) ("Since defendant did not object at trial or raise this issue in his posttrial motion, we review the issue under the plain-error doctrine").

> "[T]he plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403 (2007), citing *People v. Herron*, 215 Ill. 2d 167, 186-87, 830 N.E.2d 467 (2005).

The defendant alleges error only under the second prong of plain error. He argues that the error itself was so serious that it affected the integrity of the judicial process and requires automatic reversal. Under the second-prong analysis, if the defendant proves the error occurred, "[p]rejudice to the defendant is presumed because of the importance of the right involved." *Herron*, 215 Ill. 2d at 187.

## Two Lines of Cases

Whether a violation of Rule 431(b) is a second-prong plain error is the source of divergent lines of cases. The supreme court issued

supervisory orders on both sides of the issue, directing that the decisions be reconsidered in light of *Glasper*. See *Hammonds*, 399 Ill. App. 3d at 952 (Justice R. Gordon provides a complete list of the cases vacated by the supreme court).

We add our decision to the line of cases finding no second-prong plain error decided since the supreme court ordered the issue be reconsidered in light of *Glasper*. We note that at the time of this decision, *People v. Thompson*, No. 1—07—2891 (July 16, 2009) (unpublished order under Supreme Court Rule 23), *appeal allowed*, 234 Ill. 2d 547 (2009), is pending before the supreme court. In *Thompson*, the First District, in an unpublished decision under Rule 23, held a violation of Rule 431(b) constituted plain error under the second prong, triggering automatic reversal.

In *Glasper*, our supreme court addressed whether the circuit court's failure "to conduct *voir dire* in accordance with *Zehr* and Rule 431(b)" is subject to harmless-error analysis. *Glasper*, 234 Ill. 2d at 185. The supreme court found "[t]he trial court committed error when it ignored our long-standing precedent and our rules by refusing to question the venire in accordance with Rule 431(b)(4)." *Glasper*, 234 Ill. 2d at 189. Our supreme court ruled that harmless-error analysis applies to a violation of the 1997 version of Rule 431(b)(4). *Glasper*, 234 Ill. 2d at 185.

The 2007 version of Rule 431(b) at issue before us places a *sua sponte* duty on the circuit court to ask each of the *Zehr* questions. Ill. S. Ct. R. 431(b) (eff. May 1, 2007); *Graham*, 393 Ill. App. 3d at 273. The 1997 version required that each of the *Zehr* questions be asked of the venire only upon request of the defendant, a request defendant Glasper made. 177 Ill. 2d R. 431(b); *Glasper*, 234 Ill. 2d at 187.

The dispositive question before us is whether the 2007 amendment to Rule 431(b), imposing a *sua sponte* duty upon the circuit court, changed the analysis we must follow regarding a violation of the rule from one where harmless error applies, such that automatic reversal is rejected, to one where prejudice is presumed under the second prong of the plain error doctrine, such that automatic reversal is mandated. See *Glasper*, 234 Ill. 2d at 189 ("We are called upon to determine whether the trial court's error requires us to presume prejudice and automatically reverse defendant's conviction, or whether the error is subject to harmless-error analysis").

According to the State, because a violation of the 1997 version of Rule 431(b) is subject to harmless error under *Glasper*, a violation of the 2007 version of the rule, to which no substantive language change was made, cannot create "an error *** so serious that it affected the

fairness of the defendant's trial and challenged the integrity of the judicial process." *Piatkowski*, 225 Ill. 2d at 565, citing *Herron*, 215 Ill. 2d at 186-87.

The defendant contends the *Glasper* holding does not apply to his case. He points to the express language in *Glasper*: "[T]his holding is limited to the version of Rule 431(b)(4) that was in effect at the time of the instant trial, and would not necessarily apply to subsequent versions of the rule." *Glasper*, 234 Ill. 2d at 200. The supreme court also made clear that it did not hold, in the context where the error was preserved, "that a Rule 431(b)(4) *violation could never result in reversible error.*" *Glasper*, 234 Ill. 2d at 200. Relying on the express limitation in the *Glasper* decision, various appellate decisions have since determined *Glasper* is inapplicable to cases involving the 2007 version of the rule. See, *e.g.*, *People v. Anderson*, 399 Ill. App. 3d 856 (2010) (*Anderson II*); *People v. Yusuf*, 399 Ill. App. 3d 817 (2010) (*Yusuf II*).

In *Yusuf II*, the Fourth District held "the trial court's failure to fully comply with the amended version of Rule 431(b) caused 'a complete breakdown of the judicial process that undermines this court's confidence in the jury's verdict.' " *Yusuf II*, 399 Ill. App. 3d at 823, quoting *People v. Owens*, 394 Ill. App. 3d 147, 153, 914 N.E.2d 1280 (2009). In reconsidering in light of *Glasper*, the *Yusuf II* court relied on the very same language the defendant asserts to argue that a second-prong plain error occurred: "[T]he supreme court expressly limited its holding in *Glasper* to the preamended version of Rule 431(b)." *Yusuf II*, 399 Ill. App. 3d at 824. *Anderson II* followed much the same analysis.

We acknowledge reasonable grounds exist, as expressed in *Yusuf II*, *Anderson II*, and the dissent in this case, to disagree on the plain error issue before us. The supreme court in *Glasper* expressly held that its decision might not apply to the 2007 version of Rule 431(b), a version in existence at the time the *Glasper* decision was issued in 2009, while the court's supervisory orders, vacating decisions on both sides of the issue, directed the lower courts to reconsider the decisions in light of *Glasper*. We read the two directives to mean that we should not look to the holding in *Glasper* to control our decision but we may look to the reasoning in *Glasper* to determine whether it nonetheless applies to the 2007 version of Rule 431(b). We find the reasoning in *Glasper* to apply with equal force here.

## No Fundamental Right Involved

The supreme court in *Glasper* noted its traditional "reluctance to hold that automatic reversal was required for a violation of a 'right'

conferred upon defendants by a rule of [the supreme] court." *Glasper*, 234 Ill. 2d at 197, quoting *People v. Daniels*, 172 Ill. 2d 154, 165, 665 N.E.2d 1221 (1996). It observed the Supreme Court of the United States has recognized errors as " 'subject to automatic reversal *** only in a "very limited class of cases." ' " *Glasper*, 234 Ill. 2d at 198, quoting *Neder v. United States*, 527 U.S. 1, 8, 144 L. Ed. 2d 35, 46, 119 S. Ct. 1827, 1833 (1999), quoting *Johnson v. United States*, 520 U.S. 461, 468-69, 137 L. Ed. 2d 718, 728, 117 S. Ct. 1544, 1549-50 (1997). The Illinois Supreme Court observed that the trial court's error in *Glasper*, to follow long-established precedent and the clear language of Rule 431(b), did not "involve a fundamental right, or even a constitutional protection." *Glasper*, 234 Ill. 2d at 193. Because the error involving the 1997 version of Rule 431(b) did not involve a fundamental right or constitutional protection, the supreme court examined the legal grounding for defendant Glasper's claim that the error should give rise to a presumption of prejudice.

While noting that in a different case a violation of Rule 431(b)(4) might constitute reversible error, the supreme court determined that "the trial court's error [in *Glasper*] was harmless beyond a reasonable doubt." *Glasper*, 234 Ill. 2d at 203 (noting "several federal appellate courts" have determined that *Zehr*-type jury instruction errors "may be deemed harmless where the evidence is overwhelming"). In other words, a clear violation of the 1997 version of Rule 431(b), with or without a timely objection, would not give rise to a presumption of prejudice (as a second-prong plain error would). See *Herron*, 215 Ill. 2d at 187 (where a second-prong error is proved, "[p]rejudice to the defendant is presumed because of the importance of the right involved").

The *Glasper* court rejected the defendant's claim that prejudice should be presumed because "automatic reversal is not even required in cases where the prosecution makes an erroneous reference to a defendant's decision to exercise his constitutional right to remain silent in violation of *Doyle v. Ohio*, 426 U.S. 610, 619, 49 L. Ed. 2d 91, 98, 96 S. Ct. 2240, 2245 (1976)." *Glasper*, 234 Ill. 2d at 198. It would be incongruous to require automatic reversal for a judge's failure to ascertain a juror's understanding and acceptance that a "defendant's failure to testify cannot be held against him or her" when it has repeatedly been held that a violation of that same constitutional right by a prosecutor in the course of a trial is subject to harmless-error analysis, thus precluding automatic reversal. *Glasper*, 234 Ill. 2d at 198, citing *People v. Dameron*, 196 Ill. 2d 156, 164-66, 751 N.E.2d 1111 (2001). To find otherwise would result in anomalous outcomes, granting automatic reversal when a jury is not informed of the principle,

but rejecting automatic reversal when the principle itself is violated during the course of a trial. *Glasper*, 234 Ill. 2d at 198.

An automatic reversal for a violation of the 1997 version of Rule 431(b) would also engender tension with well-established case law that juries are presumed to act as instructed:

"We reject the idea that the trial court's failure to conduct Rule 431(b)(4) questioning makes it inevitable that the jury was biased, particularly when the record before us demonstrates that the jurors in this case were both admonished and instructed against forming an adverse inference against defendant based on his decision not to testify. To do so would require us to presume that citizens sworn as jurors ignore the law and the jury instructions given to them. This notion is contrary to our precedent which instructs us to make the opposite presumption." *Glasper*, 234 Ill. 2d at 201, citing *People v. Taylor*, 166 Ill. 2d 414, 438, 655 N.E.2d 901 (1995) ("The jury is presumed to follow the instructions that the court gives it").

Given the reasoning of the supreme court in *Glasper*, we are persuaded that its analysis applies with equal force against a presumption-of-prejudice finding that a second-prong plain error would trigger in this case. Critical to our holding is the defendant's failure to marshal a persuasive reason that the 2007 amendment to Rule 431(b), imposing a *sua sponte* duty on the circuit court, makes full compliance with the rule indispensable to a fair trial for him, as he argues for a second-prong plain error, but the trial judge's erroneous denial of the defendant's request that a specific *Zehr* question be asked of the venire was not indispensable to a fair trial for defendant Glasper. As we see it, the change to Rule 431(b) in the 2007 amendment did not alter the right in question: it remains neither "a fundamental right, [nor] even a constitutional protection." *Glasper*, 234 Ill. 2d at 193. In the absence of a cogent reason to find the instant defendant's situation substantively different from the situation of defendant Glasper, we are persuaded that the supreme court's reasoning in *Glasper* applies to the 2007 version of Rule 431(b), which means its violation does not give rise to a presumption of prejudice.

Consistent with the First District cases that reject a violation of Rule 431(b) as a second-prong plain error—*Magallanes*, 397 Ill. App. 3d 72; *Hammonds*, 399 Ill. App. 3d 927—the error committed by the trial judge in this case did not trigger automatic reversal.

## CONCLUSION

The trial judge violated Supreme Court Rule 431(b) when he did not inform the prospective jurors, either individually or in a group, about each *Zehr* principle followed by a timely opportunity to respond to specific questions concerning their acceptance and understanding of

the principles set out in the rule. The error, however, does not involve a fundamental right or constitutional protection, such that prejudice is presumed upon proof of the error under the second prong of the plain error doctrine. Because the defendant does not contend the error by the trial judge was plain error under the first prong, the error concerning the trial judge's failure to adhere to Rule 431(b) is forfeited.

Affirmed.

PATTI, J., concurs.

PRESIDING JUSTICE HALL dissenting:

I agree with the majority's conclusion that the trial court violated Illinois Supreme Court Rule 431(b) (eff. May 1, 2007). I disagree, however, with the majority's finding that the error does not warrant reversal under the second prong of the plain-error analysis.

I believe that word deletions in the 2007 amendment to Rule 431(b) alter our analysis from that of *People v. Glasper*, 234 Ill. 2d 173, 917 N.E.2d 401 (2009). In *Glasper*, the rule at issue was the 1997 version of Rule 431(b), which required trial courts to question prospective jurors about the *Zehr* principles only if requested to do so by defense counsel. *Glasper*, 234 Ill. 2d at 187.

The 1997 version of Rule 431(b) actually represented a compromise. See *People v. Alexander*, 396 Ill. App. 3d 563, 580, 919 N.E.2d 1016 (2009) (McDade, J., concurring in part and dissenting in part). The Supreme Court Rules Committee initially recommended that trial courts be required to question prospective jurors on each of the four *Zehr* principles. *Alexander*, 396 Ill. App. 3d at 580 (McDade, J., concurring in part and dissenting in part); *Glasper*, 234 Ill. 2d at 187. The supreme court rejected the recommendation and instead added subsection (b), requiring trial courts to undertake such questioning only if requested by defendant. *Alexander*, 396 Ill. App. 3d at 580 (McDade, J., concurring in part and dissenting in part); see also *Glasper*, 234 Ill. 2d at 200 ("As previously stated, when crafting the version of Rule 431(b) applicable here, this court had the opportunity to mandate *Zehr* questioning in every case, but chose not to. Instead, this court made the right to *Zehr* questioning permissive").

In 2007, the supreme court amended Rule 431(b), this time adopting the procedure it had rejected 10 years earlier. *Alexander*, 396 Ill. App. 3d at 580 (McDade, J., concurring in part and dissenting in part). The 2007 amendment deleted the words: "If requested by the defendant." Ill. S. Ct. R. 431(b) (eff. May 1, 2007). The deletion had

the effect of imposing an affirmative *sua sponte* duty on trial courts to question prospective jurors about the *Zehr* principles, even absent a request by defendant. See *People v. Graham*, 393 Ill. App. 3d 268, 273, 913 N.E.2d 99 (2009).

Rules of statutory construction apply equally to the interpretation of supreme court rules. *People v. Roberts*, 214 Ill. 2d 106, 116, 824 N.E.2d 250 (2005). Every amendment to a rule is presumed to have a purpose, and a court must consider the language of the amendment in light of the need for the amendment and the purpose it serves. *People v. Allen*, 313 Ill. App. 3d 842, 846, 730 N.E.2d 1216 (2000).

In amending Rule 431(b), by deleting the words: "If requested by the defendant," our supreme court evidently determined that the *Zehr* principles are so integral to the selection of an impartial jury, and thus a fair trial, that trial courts should be required to raise them *sua sponte* even if not requested to do so by defense counsel. The majority's interpretation of the 2007 version of Rule 431(b) renders meaningless the deletion of the words: "If requested by the defendant."

In light of the mandatory language of the 2007 amended version of Rule 431(b), I believe that the trial court's failure to fully comply with the rule denied defendant a fair trial and was so fundamental an error that reversal is required under the second prong of the plain-error analysis.