THIRD DIVISION
June 30, 2010

No. 1-08-2420

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | APPEAL FROM THE |
| | ) | CIRCUIT COURT OF |
| Plaintiff-Appellee, | ) | COOK COUNTY |
| | ) | |
| v. | ) | No. 07 CR 21175 |
| | ) | |
| JAMES HILL, | ) | HONORABLE |
| | ) | JOSEPH G. KAZMIERSKI, JR., |
| Defendant-Appellant. | ) | JUDGE PRESIDING. |

JUSTICE STEELE delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant James Hill was found guilty of possession of a controlled substance with intent to deliver and delivery of a controlled substance. Based on Hill's criminal history, the trial court sentenced Hill as a Class X offender (730 ILCS 5/5-5-3(c)(8) (West 2006)) to two concurrent 12-year terms in prison. On appeal, Hill argues: (1) his conviction should be reversed, because the circuit court failed to comply with Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007); (2) the circuit court denied Hill's knowing right to testify by refusing to rule on his motion in limine to bar the introduction of his prior convictions for impeachment purposes; (3) his sentences are excessive; (4) the mittimus should be corrected to reflect two extra days of credit; and (5) the mittimus should be corrected to reflect a conviction for possession of a controlled substance with intent to deliver and not manufacture or delivery of a controlled substance. For the following reasons, we affirm Hill's conviction and modify the mittimus.

BACKGROUND

The record on appeal discloses the following facts. During jury selection, the trial judge asked the first and second panels of prospective jurors whether they had a problem with the principles of law that the defendant is presumed innocent, that the presumption remains until the State proves the defendant guilty beyond a reasonable doubt, and that the defendant is not required to present any evidence on his behalf. Defense counsel asked the first panel whether it would affect their verdict if Hill chose not to testify. Defense counsel asked the second panel if Hill chose not to testify, "would that fact prevent you from giving him a fair and impartial trial?" The trial judge asked a prospective juror on the second panel about following the instruction that a defendant's decision not to testify should not be considered in reaching a verdict.

The trial judge asked the third panel of prospective jurors whether they understood the defendant is presumed innocent, that the presumption remains until the State proves the defendant guilty beyond a reasonable doubt, and that the defendant is not required to present any evidence. The trial judge also asked whether they could follow the law as he issued it, even if they personally disagreed with it. The prosecutor asked jurors in this panel whether they could follow the judge's instruction that, if Hill did not testify, they could not consider that fact in reaching a verdict.

The trial judge asked the fourth and fifth panels of prospective jurors whether they had any problem with the principles of law that applied to this case that he mentioned earlier.

Prior to the introduction of evidence, defense counsel moved in limine to bar Hill's prior convictions from being introduced as impeachment evidence if Hill testified. The trial court

barred use of four convictions, finding them unduly prejudicial. The trial court deferred ruling on the use of four other convictions, stating that the convictions were within the past 10 years, but that the rulings would depend on the nature of Hill's testimony, if any.

At trial, Chicago police officer Saud Haidari testified that on September 22, 2007, he was working as a surveillance officer for an undercover narcotics team assigned to the corner of Francisco Avenue and Flournoy Street. From a distance, Officer Haidari observed Hill engage in several hand-to-hand transactions where Hill tendered an unknown item in exchange for cash. Officer Haidari radioed his observations to his team, after which he observed Hill engage in a transaction with Chicago police detective Rhonda Anderson.

Detective Anderson testified that after she received a description of Hill from Officer Haidari, she drove up to Hill in an unmarked car and told him she needed "two blows," which was a street term for heroin. Hill gave Anderson two pink-tinted Ziploc bags containing a white, powdered substance, in exchange for a $20 bill, which had a prerecorded serial number. Anderson then radioed her team that she had engaged in a positive narcotics transaction.

Chicago police officer Konior testified that he and two other enforcement officers received confirmation of Detective Anderson's buy and, based on Anderson's description, apprehended Hill. Detective Anderson drove by and confirmed that Hill was the man involved in the transaction. Officer Konior testified that the officers conducted a custodial search of Hill, which resulted in the discovery of five pink-tinted Ziploc bags containing suspected heroin and $97, including the $20 bill used in Detective Anderson's transaction.

Illinois State Police forensic scientist Thomas Halloran testified that the two pink-tinted Ziploc bags Anderson bought from Hill contained 0.5 grams of heroin. Halloran also testified that the five pink-tinted Ziploc bags discovered in the custodial search contained 1.5 grams of heroin.

Hill chose not to testify on his behalf.

The jury found Hill guilty of possession with intent to deliver 1 to 14 grams of heroin and delivery of heroin. Hill filed a motion for new trial, which the trial court denied on July 21, 2008. After hearing evidence in aggravation and mitigation, the trial court sentenced Hill as a Class X offender (730 ILCS 5/5-5-3(c)(8) (West 2006)) to two concurrent 12-year terms in prison. On August 21, 2008, the trial court denied Hill's motion to reconsider his sentence. Hill filed a notice of appeal to this court the same day. On August 22, 2008, the trial court denied Hill's pro se motion to reduce his sentence. Hill filed a second notice of appeal on September 4, 2008. On November 12, 2009, the Illinois Supreme Court entered a supervisory order directing this court to allow the notice of appeal to stand as validly filed.

DISCUSSION

I

On appeal, Hill first argues that the circuit court violated Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007) for failing to establish that each prospective juror understood and agreed with the four principles enunciated by our supreme court in People v. Zehr, 103 Ill. 2d 472, 469 N.E.2d 1062 (1984). The State correctly notes that Hill forfeited this issue by failing to make a contemporaneous objection at trial and raising it in his posttrial motion. E.g., People v. Banks, 161 Ill. 2d 119, 143, 641 N.E.2d 331,

1-08-2420

342 (1994). Nevertheless, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." 134 Ill. 2d R. 615(a). The plain error doctrine operates when:

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." People v. Piatkowski, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 411 (2007).

Under both prongs of the plain error doctrine, " 'the burden of persuasion remains with the defendant.' " Piatkowski, 225 Ill. 2d at 565, 870 N.E.2d at 411, quoting People v. Herron, 215 Ill. 2d 167, 187, 830 N.E.2d 467, 480 (2005).

The first step is to determine whether any error was committed. People v. Hudson, 228 Ill. 2d 181, 191, 886 N.E.2d 964, 971 (2008). Illinois Supreme Court Rule 431(b) codifies the Illinois Supreme Court's holding in People v. Zehr that four inquiries must be made of potential jurors in a criminal case that " 'go[ ] to the heart of a particular bias or prejudice which would deprive [a] defendant of his right to a fair and impartial jury.' " People v. Zehr, 103 Ill. 2d 472, 477, 469 N.E.2d 1062, 1064 (1984), quoting People v. Zehr, 110 Ill. App. 3d 458, 461, 442 N.E.2d 581, 584 (1982). The version of Rule 431(b) that was in effect when Hill's trial began in May 2008 (the 2007 rule) provides:

1-08-2420

"The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted, the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry shall be made into the defendant's failure to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.

The prior version of the rule began with the phrase "If requested by the defendant." 177 Ill. 2d R. 431(b). The 2007 rule removes the prefatory language and requires the trial court to issue the Zehr admonitions and inquiries sua sponte. We examine the record to determine whether the clear mandates of the rule were followed. Compliance with a supreme court rule is reviewed de novo. E.g., People v. Lloyd, 338 Ill. App. 3d 379, 384, 788 N.E.2d 1169, 1173 (2003).

In People v. Wheeler, No. 1-08-1370 (March 31, 2010), this court ruled that the trial judge's inquiry of the first nine jurors -- as to whether they agreed with the "principles" he had addressed earlier --  was much like " 'a general question concerning the juror's willingness to follow the law' " that Rule 431(b) sought to prohibit. Wheeler, slip op. at 7, quoting 177 Ill. 2d R. 431(b) Committee Comments, at lxxix. The Wheeler court also ruled that the questioning of the prospective jurors about each Zehr principle must be timely connected to an

-6-

" 'opportunity to respond to specific questions concerning the principles.' " <u>Wheeler</u>, slip op. at 8, quoting Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007. The <u>Wheeler</u> court reasoned:

> "[I]n order to connect the <u>Zehr</u> principles to the opportunity of the venire to express their understanding and acceptance of each of the principles, the recitation of the principles and the questioning of the venire must be connected closely in time." <u>Wheeler</u>, slip op. at 8-9.

Accordingly, this court concluded that the trial judge violated Rule 431(b), not only by asking too general a question, but also in failing to ascertain the prospective jurors' understanding and acceptance of the specific principles in a timely manner. <u>Wheeler</u>, slip op. at 10.

In this case, the trial judge initially mentioned three of the <u>Zehr</u> principles, leaving the fourth as a subject for questioning by defense counsel. However, the fourth and fifth panels – from which six jurors were selected – were only asked a general question about the principles the trial judge mentioned earlier, with <u>voir dire</u> on a variety of subjects in the intervening time period. We agree with the reasoning of <u>Wheeler</u> and conclude that the trial judge's method of inquiry here failed to provide each juror an opportunity to respond to specific questions concerning the principles set forth in Rule 431(b).

Having concluded that the trial court erred, we address the issue of whether the error falls into either of the two categories identified in cases like <u>Piatkowski</u>. Hill does not argue on appeal that the evidence is so closely balanced that the error alone threatened to tip the scales of justice against him. Rather, Hill argues that the error was so serious that it affected the integrity of the

judicial process and requires automatic reversal. In such cases "[p]rejudice to the defendant is presumed because of the importance of the right involved." Herron, 215 Ill. 2d at 187, 830 N.E.2d at 480.

Whether a Rule 431(b) violation is a second-prong plain error is the source of divergent decisions from this court. The Illinois Supreme Court issued supervisory orders on both sides of the issue, directing that the decisions be reconsidered in light of People v. Glasper, 234 Ill. 2d 173, 917 N.E.2d 401 (2009). See People v. Hammonds, No. 1-08-0194, slip op. at 48 (February 11, 2010) (cataloging cases vacated by our supreme court). In Glasper, the Illinois Supreme Court ruled that harmless-error analysis applied to a violation of the 1997 version of Rule 431(b)(4). Glasper, 234 Ill. 2d at 185-86, 917 N.E.2d at 409.

Hill – like other defendants – notes that the rule of Glasper "is limited to the version of Rule 431(b)(4) that was in effect at the time of the instant trial, and would not necessarily apply to subsequent versions of the rule." Glasper, 234 Ill. 2d at 200, 917 N.E.2d at 418. The supreme court also made clear that it did not hold, in the context where the error was preserved, "that a Rule 431(b)(4) violation could never result in reversible error." Glasper, 234 Ill. 2d at 200, 917 N.E.2d at 418. Relying on these aspects of Glasper, various appellate decisions have ruled that Glasper is inapplicable to cases involving the 2007 rule. See, e.g., People v. Anderson, 1–07–1768 (March 29, 2010); People v. Yusuf, No. 4-08-0034 (April 13, 2010). The Fourth District adopted a bright-line rule that the failure to comply with amended Rule 431(b) denies a defendant a substantial right and thus, a fair trial. Yusuf, slip op. at 13. In contrast, the first division of this district distinguished Glasper, finding second-prong plain error where the trial

judge not only failed to comply with Rule 431(b)(4), but also failed to comply with Rules 431(b)(1) through (b)(3). <u>Anderson</u>, slip op. at 17-18.

However, in <u>People v. Magallanes</u>, 397 Ill. App. 3d 72, 92, 921 N.E.2d 388, 405 (2009), this division of the First District rejected the bright-line rule, reasoning:

"[T]here is no quantitative or qualitative difference between the trial court failing to admonish jurors when requested to do so, as in <u>Glasper</u>, and when the trial court fails to admonish jurors under the amended rule ***."

In <u>Wheeler</u>, the first division of this district also found the reasoning in <u>Glasper</u> applicable to the 2007 version of the rule (two days after issuing a contrary ruling in <u>Anderson</u>). <u>Wheeler</u>, slip op. at 16. The <u>Wheeler</u> decision also notes that in <u>Glasper</u>, our supreme court stated that the Rule 431(b)(4) violation "did not 'involve a fundamental right, or even a constitutional protection.' " <u>Wheeler</u>, slip op. at 16, quoting <u>Glasper</u>, 234 Ill. 2d at 193, 917 N.E.2d at 413.

As noted earlier, the <u>Anderson</u> decision rules that violations of Rules 431(b)(1) through (b)(3) deny a substantial right, even if a Rule 431(b)(4) violation, by itself, does not constitute second-prong plain error. <u>Anderson</u>, slip op. at 17-18. Yet in <u>Glasper</u>, the supreme court's ruling that automatic reversal was not required was based in part on <u>People v. Emerson</u>, 122 Ill. 2d 411, 522 N.E.2d 1109 (1987), which involved admonitions regarding the presumption of innocence. <u>Glasper</u>, 234 Ill. 2d at 197, 917 N.E.2d at 416. The <u>Glasper</u> court's reliance on <u>Emerson</u> suggests that violations of Rules 431(b)(1) through (b)(3) are not qualitatively different in this context from a violation of Rule 431(b)(4).

Moreover, the <u>Glasper</u> court later stated:

"If the facts in this case demonstrated that the trial court's failure to question the venire in accordance with Rule 431(b)(4) resulted in defendant being tried before a biased jury, we would not hesitate to reverse defendant's conviction, as a trial before a biased jury would constitute structural error. However, there are no such facts in the instant case. We reject the idea that the trial court's failure to conduct Rule 431(b)(4) questioning makes it inevitable that the jury was biased, particularly when the record before us demonstrates that the jurors in this case were both admonished and instructed against forming an adverse inference against defendant based on his decision not to testify. To do so would require us to presume that citizens sworn as jurors ignore the law and the jury instructions given to them. This notion is contrary to our precedent which instructs us to make the opposite presumption. See People v. Taylor, 166 Ill. 2d 414, 438 (1995) ('The jury is presumed to follow the instructions that the court gives it')." Glasper, 234 Ill. 2d at 200-01, 917 N.E.2d at 418.

Glasper thus suggests that – absent evidence to the contrary – the proper presumption is that the jurors followed its instructions, rather than to presume the defendant was denied a fair trial. In this case, Hill identifies no evidence that the trial court's error resulted in his being tried before a biased jury.

In sum, based on Glasper, Wheeler and our prior decision in Magallanes, we conclude that Hill has failed to show plain error that would trigger an automatic reversal in this case.

II

Hill next argues that the circuit court denied his knowing right to testify by refusing to rule on his motion in limine to bar the introduction of his prior convictions for impeachment purposes. Hill also argues that the decision denied his due process right to "the guiding hand of counsel" and his right to a remedy under the Illinois Constitution. Hill relies primarily on People v. Patrick, 233 Ill. 2d 62, 908 N.E.2d 1 (2009), in which our supreme court held that "a trial court's failure to rule on a motion in limine on the admissibility of prior convictions when it has sufficient information to make a ruling constitutes an abuse of discretion." Patrick, 233 Ill. 2d at 73, 908 N.E.2d at 7. However, the Patrick court also held that a defendant fails to preserve for appeal the issue of the trial court's refusal to rule on the admissibility of his prior convictions, when the defendant does not testify at trial. Patrick, 233 Ill. 2d at 77, 908 N.E.2d at 10. In this case, Hill did not testify at trial, thereby forfeiting the issue on appeal.

Hill argues that the forfeiture rule of Patrick should not apply because the trial judge had a "blanket policy" of refusing to rule on such motions, which is necessarily arbitrary. Assuming arguendo that the trial judge had a blanket policy, we note that the Illinois Supreme Court squarely rejected the argument in People v. Averett, Nos. 106362, 106621 cons. (April 15, 2010). The Averett court ruled that the trial court's application of a blanket policy of deferring rulings on motions in limine did not violate the defendants' constitutional rights to testify or to the "guiding hand of counsel." Averett, slip op. at 10. The Averett court also rejected the state constitutional claim, noting that article I, section 12, of the Illinois Constitution (Ill. Const. 1970, art. I, §12) only expresses a philosophy and does not require a certain remedy in any specific form. Averett,

-11-

slip op. at 15. Hill further argues that the forfeiture rule of Patrick is wrongly decided. Although we understand Hill's desire to preserve the issue for review, this court has no power to reverse a decision of the Illinois Supreme Court. E.g., O'Casek v. Children's Home & Aid Society of Illinois, 229 Ill. 2d 421, 440, 892 N.E.2d 994, 1006 (2008) (stare decisis requires courts to follow the decisions of higher courts). Accordingly, Hill's arguments on this issue fail.

### III

Moreover, Hill argues that his 12-year sentences are excessive, claiming that the trial court failed to consider relevant mitigating factors, including the nonviolent nature of the offenses and Hill's drug addiction. It is well established that the sentence imposed by a trial court is entitled to great deference, and when the sentence is within the statutory limits, it may be disturbed only where the trial court has abused its discretion. E.g., People v. Bosley, 233 Ill. App. 3d 132, 139, 598 N.E.2d 355, 360 (1992) (and cases cited therein). So long as the trial court " 'does not consider incompetent evidence, improper aggravating factors, or ignore pertinent mitigating factors, it has wide latitude in sentencing a defendant to any term within the statutory range prescribed for the offense.' " Bosley, 233 Ill. App. 3d at 139, 598 N.E.2d at 360, quoting People v. Hernandez, 204 Ill. App. 3d 732, 740, 562 N.E.2d 219, 225 (1990). The trial court has no obligation to recite and assign value to each factor presented at a sentencing hearing. People v. Baker, 241 Ill. App. 3d 495, 499, 608 N.E.2d 1251, 1253 (1993). Where mitigating evidence is presented to the trial court during the sentencing hearing, we may presume that the trial court considered it, absent some indication, other than the sentence itself, to the contrary. People v. Dominguez, 255 Ill. App. 3d 995, 1004, 626 N.E.2d 775, 783 (1994).

In this case, based on Hill's criminal history, the trial court sentenced Hill as a Class X offender (730 ILCS 5/5-5-3(c)(8) (West 2006)), which has a sentencing range of 6 to 30 years in prison (730 ILCS 5/5-8-1(a)(3) (West 2006)). Thus, Hill's sentence falls within the statutory range. Indeed, as Hill acknowledges, even absent the Class X statute, possession with intent to deliver 1 to 14 grams of heroin is a Class 1 offense with a maximum sentence of 15 years. See 720 ILCS 570/401(c)(1) (West 2006); 730 ILCS 5/5-8-1(a)(4) (West 2006).

Hill's claim that the court failed to consider his drug addiction is incorrect. The transcript of proceedings shows that the trial court did consider the presentence investigation report, which detailed Hill's drug use. The trial judge specifically mentioned Hill's participation in a substance abuse treatment program while incarcerated as a mitigating factor.

Hill's claim that the court failed to consider the nonviolent nature of the offenses is unpersuasive. The trial judge heard the evidence adduced at trial and is presumed to know violence was not involved in this case. The trial judge was also entitled to consider that, in addition to the offenses prerequisite to Class X sentencing, Hill had 14 felony convictions, 13 of which were drug-related – a factor that certainly bears on Hill's potential for rehabilitation.

As the reviewing court, we are not to reweigh the factors considered in determining the defendant's sentence nor are we to substitute our judgment for that of the trial court simply because we would have weighed the factors differently. People v. Jones, 376 Ill. App. 3d 372, 394, 876 N.E.2d 15, 34 (2007). In this case, Hill has failed to show the trial court abused its discretion in imposing his concurrent 12-year sentences.

IV

Moreover, Hill argues that this court should correct the mittimus to reflect 304 days spent in custody as credited against his sentence, as opposed to the 302 days noted by the trial court. Hill maintains that he should receive credit for the day of his arrest and the day he was sentenced. The State responds that Hill should receive credit for the former, but not the latter. Pursuant to Supreme Court Rule 615 (134 Ill. 2d R. 615), a reviewing court may correct the mittimus without remanding the cause to the trial court. See, e.g., People v. Davis, 303 Ill. App. 3d 684, 688, 708 N.E.2d 1181, 1184 (1999).

Except for certain specified offenses, a prisoner serving a term of imprisonment receives one day of good conduct credit for each day of his prison sentence. 730 ILCS 5/3-6-3(a)(2.1) (West 2006). A sentence of imprisonment begins on the date when a defendant is received by the Department of Corrections (Department). 730 ILCS 5/5-8-7(a) (West 2006). There is an apparent split of opinion in this court as to whether, under sections 3-6-3 and 5-8-7 of the Unified Code of Corrections (730 ILCS 5/3-6-3, 5-8-7 (West 2006)), the day of sentencing is included in computing of the presentencing credit.

The Fourth District has held that the day of sentencing is not included in calculating the presentence credit if the defendant is remanded to the Department on the same day, while several cases outside the Fourth District, including this district, have held implicitly in their calculation of presentencing credit that the day of sentencing is included. See People v. Williams, 394 Ill. App. 3d 480, 481-82, 917 N.E.2d 547, 548-49 (2009), appeal allowed, No. 109361 (January 27, 2010) (and cases cited therein). The Williams court reasoned as follows:

-14-

1-08-2420

"After considering the above cases, we find little concrete legal foundation for the split in cases. The cases that include the day of sentencing in the presentencing credit apparently follow the undisputed rule that a portion of a day spent in custody adds a day of credit by implicitly acknowledging that a defendant in custody spends a portion of the sentencing day in custody prior to sentencing. The cases excluding the day of sentencing from the credit seek to prevent a defendant from receiving double credit: one day under section 5-8-7 for the portion of the sentencing day spent in presentencing detention and one day under section 3-6-3 for the portion of the same day spent after issuance of the mittimus commences the prison sentence in the Department's legal (if not physical) custody.

We find the concern over double credit persuasive and thus hold that a defendant is not entitled to credit for the day of sentencing if the mittimus is issued effective that same day. Conversely, where the mittimus is not issued or not effective on the day of sentencing, the defendant is not yet in Department custody so that the presentencing credit under section 5-8-7 applies rather than any credit under section 3-6-3. Since defendant's mittimus issued on the day of his sentencing, he is entitled to 287 days' credit [as opposed to 288 days] for presentencing detention." Williams, 394 Ill. App. 3d at 483, 917 N.E.2d at 549-50.

Following Williams, this court also noted in People v. Jones, 397 Ill. App. 3d 651, 656, 921 N.E.2d 768, 771-72 (2009):

-15-

"[T]he fact that the Unified Code of Corrections demarcates two separate periods for calculating defendant's sentencing credit suggests that a defendant should not receive credit twice for a single day. In the statute quoted above, subsection (a) delineates the postsentencing credit, while subsection (b) delineates the presentencing credit. 730 ILCS 5/5-8-7 (West 2006). The fact that the two separate subsections set out two different time periods suggests a legislative intent that a defendant should not receive credit twice for the same day."

In this case, the potential double credit problem does not exist. This court may take judicial notice of the Department's records, because they are public documents. People v. Peterson, 372 Ill. App. 3d 1010, 1019, 868 N.E.2d 329, 336 (2007). Here, the Department's records show an admission date of July 22, 2008 – the date after Hill was sentenced. Accordingly, we conclude that Hill is entitled to presentencing credit for the date of sentencing. Therefore, we order the mittimus corrected to reflect 304 days of presentencing credit for time served.

V

Finally, Hill argues that the mittimus should be corrected to reflect a conviction for possession of a controlled substance with intent to deliver, not manufacture or delivery of a controlled substance. The State agrees. Accordingly, we correct the convictions on Hill's mittimus to reflect possession of a controlled substance with intent to deliver and delivery of a controlled substance.

CONCLUSION

Although the trial judge violated Rule 431(b), Hill failed to show plain error that would trigger an automatic reversal in this case. Hill forfeited the argument that the trial court erred in refusing to rule on his motion <u>in limine</u> to bar the introduction of his prior convictions for impeachment purposes, as Hill failed to testify at trial. Hill failed to show that the trial court abused its discretion in imposing his concurrent 12-year sentences. Hill's mittimus is corrected to reflect 304 days of presentencing credit for time served and to reflect convictions for possession of a controlled substance with intent to deliver and delivery of a controlled substance.

Affirmed; mittimus corrected.

MURPHY, P.J., and COLEMAN, J., concur.